HAYDEN v GREEN

Docket No. 91963. Submitted August 4, 1987, at Detroit. Decided
    February 16, 1988. Leave to appeal applied for.

    Cicero W. Hayden, Jr., brought a legal malpractice action in
    Wayne Circuit Court against attorney Philip Green and the law
    firm of Colista, Green, Green & Adams in November, 1982.
    Plaintiff had retained defendants in 1975 to represent him in
    an action in federal district court. In February, 1980, the
    district court entered a judgment in favor of plaintiff. However
    the amount of damages was left to the stipulation of the parties
    or, if no agreement could be reached, the district court was to
    set the amount upon submission of documentation of damages
    by defendants. Plaintiff's judgment was dismissed in April,
    1980, when defendants failed to submit the documents as
    ordered. In June, 1980, defendant Green left defendant law
    firm. However, Green continued to represent plaintiff in an
    appeal to the Sixth Circuit Court of Appeals, which affirmed
    the district court's dismissal in August, 1982. The Wayne
    Circuit Court, Roland L. Olzark, J., granted summary disposi-
    tion in favor of defendant law firm, ruling that plaintiff's action
    as to the law firm was barred by the statute of limitations.
    Plaintiff appealed.

    The Court of Appeals held:

    An action for legal malpractice must be brought within two
    years of the date the attorney discontinues serving the plaintiff
    or within six months after the plaintiff discovers or should have
    discovered the existence of the claim, whichever is later. In this
    case, the law firm's liability has its basis in agency principles
    and the malpractice complained of, Green's failure to submit
    the documents as ordered, occurred while Green was a member
    of defendant law firm. Thus, plaintiff's malpractice claim, hav-
    ing been filed within six months of the termination of Green's
    services, was timely.

    Reversed.

REFERENCES

Am Jur 2d, Attorneys at Law §§ 203, 210-211, 217-222.
Legal malpractice by permitting statutory time limitation to run
    against client's claim. 90 ALR3d 293.

HOOD, J., dissented and would hold that plaintiff's claim as to defendant law firm, having not been filed within six months of discovery of the alleged malpractice or within two years from the date the law firm discontinued serving plaintiff, is barred by the statute of limitations.

1. ATTORNEY AND CLIENT — LEGAL MALPRACTICE — LIMITATION OF ACTIONS.

An action for legal malpractice must be brought within two years of the date the last service is performed or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later (MCL 600.5805[1] and [4], 600.5838; MSA 27A.5805[1] and [4], 27A.5838).

2. ATTORNEY AND CLIENT — LEGAL MALPRACTICE — LIMITATION OF ACTIONS.

An action for legal malpractice against an attorney's former law firm brought more than two years after the attorney left his former firm, but within two years of the date the attorney performed his last service for the plaintiff, is not barred by the statute of limitations where the alleged malpractice occurred while the attorney was a member of his former law firm (MCL 600.5805[1] and [4], 600.5838; MSA 27A.5805[1] and [4], 27A.5838).

*Michael A. Szymanski,* for plaintiff.

*Collins, Einhorn & Farrell, P.C.* (by *Michael J. Sullivan* and *Noreen L. Slank*), for defendants.

Before: SHEPHERD, P.J., and HOOD and CYNAR, JJ.

SHEPHERD, P.J. Plaintiff appeals from an order of the Wayne Circuit Court granting the motion for summary disposition of defendant Colista, Green, Green & Adams (CGG & A) on the ground that plaintiff's legal malpractice action was barred by the statute of limitations. We reverse.

In October, 1975, plaintiff retained defendant Philip Green of the firm of CGG & A to represent him in his federal district court employment discrimination action against Chrysler Corporation.

Following trial, the district court ruled in plaintiff's favor on February 26, 1980. In its order, the court directed the parties to submit to it within fifteen days an amount agreed upon for plaintiff's back pay. If the parties could not agree on the amount of back pay, they were to inform the court within twenty days, whereupon the court would fix the back pay upon submission of documentation. Plaintiff's judgment was dismissed on April 16, 1980, because Green failed to submit documentation of damages pursuant to court order. Unbeknownst to plaintiff, Green left the firm on June 1, 1980, to open his own office. Plaintiff discovered the fact after having some difficulty reaching Green about his case. After a vague discussion with Green about the status of his case, plaintiff initiated an investigation and learned through a search of his district court file that his case had been dismissed and that his appeal was delayed because his district court record had not been transcribed due to nonpayment. Plaintiff paid for the transcription himself so that his appeal could go forward. Green represented the plaintiff through an appeal to the Sixth Circuit. The Sixth Circuit affirmed the district court in August, 1982. Plaintiff's malpractice action against Green and CGG & A followed in November, 1982.

The statute of limitations for a malpractice action is set forth in MCL 600.5805(1)and (4); MSA 27A.5805(1) and (4) and MCL 600.5838; MSA 27A.5838. MCL 600.5805(1) and (4); MSA 27A.5805(1) and (4) state:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

(4) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.

MCL 600.5838; MSA 27A.5838 defines when a claim for professional malpractice accrues. This statute states:

(1) . . . [A] claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

(2) . . . [A]n action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time prescribed by this subsection is barred.

There is no pertinent Michigan case law and we are faced with an issue of first impression, namely, what is the proper accrual date against a law firm for statute of limitations purposes when an attorney, while in the employ of the firm, commits actionable malpractice and then leaves the firm but keeps the file and continues to work on it?

The statute requires a plaintiff to bring his claim within two years of when it first accrued or within six months of the discovery of actionable

malpractice. The purpose behind the limitations statute is to suppress fraudulent or stale claims or claims which are difficult to defend due to the loss of evidence or witnesses after an extended period of time. *Lenawee Co v Nutten,* 234 Mich 391; 208 NW 613 (1926); *Mosley v Federal Department Stores, Inc,* 85 Mich App 333; 271 NW2d 224 (1978).

Plaintiff's claim is neither fraudulent nor stale. CGG & A was not prejudiced by the delay in filing the action here. It is worth emphasizing that Green's failure to comply with the documentation order occurred while Green was a partner with the firm of CGG & A. On any view of the facts, CGG & A's liability is premised on its relationship with Green. Had Green remained with the firm it could have been sued in this action by reason of Green's continued work on the case. We fail to see why the mere fact of Green's separation from the firm should allow the firm to better its position. Plaintiff acted as soon as his appeal failed and within six months of discontinuance of Green's services. CGG & A's liability in this matter, if any, is based on agency principles, not upon any acts committed by the firm itself or by persons in the firm other than Green. Given CGG & A's posture, plaintiff's claim was filed in a timely manner.

To hold otherwise raises troubling practical implications. If we were to uphold the dismissal of CGG & A, we would be holding that in order to protect his claim against CGG & A plaintiff would have had to bring his action against CGG & A within six months of learning of Green's departure or within two years of April 16, 1980, even though the appeal in the Sixth Circuit was still pending and Green still represented plaintiff. Thus, plaintiff would have been required to maintain two actions, one against Green and one against CGG &

A, on the same underlying facts. Such a result does
not further the policies of judicial economy or
consistency. To affirm the trial court would effec-
tively require a plaintiff to maintain two suits on
essentially the same facts in order to insulate
himself in situations where an attorney has left
the firm, voluntarily or involuntarily, after the
alleged malpractice has occurred—even though the
attorney who keeps the file may very well cure the
malpractice or mitigate its effects through his or
her efforts after leaving the firm.[1] We believe
plaintiff's action was timely here, where the ac-
tionable facts occurred while Green was a full
member of the firm, and where plaintiff filed his
suit within six months of the termination of
Green's services to plaintiff.

We need to recognize that the practice of law is
quite mobile with attorneys moving from one firm
to another. Firms merge and dissolve and files
frequently move, or remain, based upon the rela-
tionships between attorneys. Clients, such as plain-
tiff, are not necessarily aware of these relation-
ships and often remain with the attorney who
inherits the file as part of the arrangement termi-
nating the relationship among the attorneys. We
do not believe a firm should be allowed to insulate
itself from liability by terminating an attorney
and leaving the client under the false impression,
even if passively, that his or her rights are fully
protected by remaining with the departing attor-
ney whose alleged malpractice occurred under the
protective umbrella of the firm. This is what hap-

---

[1] We do not wish to imply that Green was guilty of serious malprac-
tice, even though the results were disastrous. He was apparently late
in getting data to the United States District Court. For that offense
the client's favorable verdict was taken away when, perhaps, another
penalty would have sufficed, for instance, costs imposed against
Green. However, that was a matter for the federal court to decide and
we are helpless to intervene.

pened in this case even if Green's departure was not designed for that purpose.

We are unpersuaded by the trial court's reliance on *Luick v Rademacher,* 129 Mich App 803; 342 NW2d 617 (1983). In *Luick,* the defendant, the plaintiff's divorce attorney, placed on the record on July 31, 1979, a settlement agreement to which the plaintiff had not consented. On October 26, 1979, the plaintiff discharged the defendant and retained the services of another attorney who represented plaintiff through several unsuccessful appeals to overturn the consent judgment. The plaintiff filed a legal malpractice action against the defendant on January 29, 1982, over two years after he had discharged defendant. Plaintiff's claim was dismissed on statute of limitations grounds.

The instant case is readily distinguishable. In this case, plaintiff was represented by defendant Green continuously through the appeals process. Again, we emphasize that CGG & A's liability is premised on its relationship with Green and the acts plaintiff contends constitute malpractice took place while Green was a full member of the firm. The problem of maintaining two malpractice lawsuits did not exist in *Luick* and in the instant case the appeal in the Sixth Circuit may very well have established a lack of malpractice, i.e., an argument in the Sixth Circuit was that the United States District judge and not Green or the law firm was at fault. Had plaintiff prevailed in the Sixth Circuit there might have been no malpractice case against anyone.

Reversed.

CYNAR, J., concurred.

HOOD, J., *(dissenting.)* I respectfully dissent, and

would affirm the Wayne Circuit Court. I agree
with the majority that we are dealing with the
proper accrual date of the statute of limitations,
but feel that the statute clearly applies so as to
bar the claim against the law firm.

Plaintiff retained attorney Philip Green of the
law firm Colista, Green, Green & Adams to repre-
sent him in an employment discrimination suit
against Chrysler Corporation in the United States
District Court. Following a trial, the district court
ruled in favor of plaintiff on February 26, 1980. In
its order, the court directed the parties to submit
to it within fifteen days an amount agreed upon
for plaintiff's back pay. If the parties could not
agree on the amount of back pay, they were to
inform the court within twenty days, whereupon
the court would fix the back pay upon submission
of documentation. On April 16, 1980, the district
court dismissed plaintiff's judgment because Green
failed to submit documentation after the parties
could not agree on the amount of back pay. Plain-
tiff discovered this in June, July or August, 1980,
when he went to the district court to review his
file after unsuccessful attempts to contact Green.
On August 6, 1982, the dismissal was affirmed by
the Sixth Circuit Court of Appeals when it denied
plaintiff's motion for rehearing. Plaintiff had paid
the court reporter approximately $350 out of his
own pocket when he discovered that the appeal
was being delayed because the reporter had not
been paid.

On November 29, 1982, plaintiff filed the instant
malpractice action against Green and Colista,
Green, Green & Adams. Green had left the law
firm on June 1, 1980, to open his own office. The
court subsequently granted the law firm's motion
for summary disposition pursuant to MCR
2.116(C)(7), holding that plaintiff's action against

the law firm was barred by the malpractice statute of limitations, MCL 600.5838; MSA 27A.5838. Relying on *Luick v Rademacher*, 129 Mich App 803; 342 NW2d 617 (1983), the court held that plaintiff suffered appreciable and identifiable damage on April 16, 1980, when the district court dismissed his judgment. Since plaintiff discovered Green's alleged negligence in causing the dismissal in June, July or August, 1980, when he reviewed the district court file but did not file suit within the limitations period, the court ruled that plaintiff's suit against the law firm was barred.[1]

On appeal, plaintiff claims that he did not suffer appreciable and identifiable harm until August 6, 1982, the date the Sixth Circuit affirmed the district court. Until then, plaintiff claims, his damages were not final as the Sixth Circuit could have reversed the district court. Since he filed suit within six months of August 6, 1982, plaintiff claims his suit is not barred.

The statute of limitations for a malpractice action is set forth in MCL 600.5805(1) and (4); MSA 27A.5805(1) and (4) and MCL 600.5838; MSA 27A.5838. MCL 600.5805(1) and (4); MSA 27A.5805(1) and (4) state:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.
> (4) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.

---

[1] The case against Green is still pending and the parties agree that the statute of limitations did not run as to Green since he continued to represent plaintiff during the appeal. As indicated, however, defendant law firm had no connection with and performed no services for plaintiff after June 1, 1980.

MCL 600.5838; MSA 27A.5838 defines when a claim for professional malpractice accrues. This statute states:

> (1) . . . [A] claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.
>
> (2) . . . [A]n action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time prescribed by this subsection is barred.

Thus, an action for legal malpractice must be brought within two years of the date the attorney discontinues serving the plaintiff or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. *Luick, supra,* p 806. In the instant case, plaintiff admits that he did not file suit against the law firm within two years of the time when the firm discontinued serving plaintiff, as only attorney Philip Green served plaintiff, and Green left the law firm on June 1, 1980. However, plaintiff argues that his lawsuit against the law firm was timely in accordance with the six-month discovery rule.

I am convinced that this case is governed by *Luick, supra,* the only published case in Michigan in which this Court addressed the issue whether an appeal tolls the legal malpractice statute of limitations. In *Luick,* the defendant, the plaintiff's divorce attorney, placed on the record on July 31, 1979, a settlement agreement to which the plaintiff had not consented. *Luick, supra,* p 805. On October 26, 1979, the plaintiff discharged the defendant and retained the services of another attorney who unsuccessfully attempted to have the consent judgment set aside at the trial court level. The plaintiff's appeal to this Court was similarly unsuccessful and the Supreme Court denied the plaintiff's application for leave on July 28, 1981. *Id.* The plaintiff filed a legal malpractice action against the defendant on January 29, 1982. The defendant was granted accelerated judgment on the ground that the plaintiff's cause of action accrued when the plaintiff discovered the defendant's alleged malpractice in 1979. Since the plaintiff did not file suit within six months, the suit was barred. *Id.,* pp 805-806. The plaintiff claimed that his cause of action did not accrue until the Supreme Court denied his application for leave to appeal, because it was not until then that his damages became fixed. *Id.,* p 806. The trial court rejected this argument, and this Court agreed, stating:

> It is true, as plaintiff contends, that tort actions accrue only when all the necessary elements of a cause of action have occurred and can be alleged in a proper complaint. . . . Until a plaintiff suffers damages, a tort claim does not exist, cannot be asserted and, therefore, does not accrue so as to trigger the running of the statute of limitations. . . .
> It is, however, the fact of identifiable and appre-

ciable loss, and not the finality of monetary dam-
ages, that gives birth to the cause of action. [*Luick,
supra,* p 806.]

This Court quoted with approval the language of
*Budd v Nixen,* 6 Cal 3d 195, 200-201; 98 Cal Rptr
849; 491 P2d 433 (1971):

"The cause of action arises, however, before the
client sustains all, or even the greater part, of the
damages occasioned by his attorney's negligence.
Any appreciable and actual harm flowing from the
attorney's negligent conduct establishes a cause of
action upon which the client may sue.
"Indeed, once having discovered his attorney's
negligence and having suffered some damage, the
client must institute his action within the time
prescribed in the statute of limitations or he will
be barred from thereafter complaining of his attor-
ney's conduct." [*Luick, supra,* pp 807-808.]

Applying this rationale to Luick's case, we found
that the plaintiff suffered identifiable and appreci-
able harm well in advance of the time the Su-
preme Court denied his application for leave to
appeal. The plaintiff's complaint asserted that as a
result of the defendant's actions he suffered men-
tal anguish and anxiety, was damaged by the loss
of the use of his property from the time the
consent judgment was entered into, and was re-
quired to retain substitute counsel to pursue post-
judgment remedies. The plaintiff knew of these
damages before he discharged his attorney; thus,
his claim was barred. *Luick, supra,* pp 808-809.
Thus, the fact that the plaintiff had appealed the
underlying case did not toll the statute of limita-
tions.

In the instant case, I feel plaintiff suffered ap-
preciable and identifiable harm on April 16, 1980,

when the district court dismissed his judgment. This dismissal deprived plaintiff of the back pay he could have received at that time. In addition, he incurred time and expense in contacting other counsel to remedy the situation, and even had to pay the court reporter to allow the appeal to proceed. Plaintiff discovered attorney Green's negligence in June, July or August, 1980, when he reviewed his file at the district court and discovered that his judgment had been dismissed for lack of documentation. His claim against defendant law firm is based solely on Green's actions as a member of or on behalf of the law firm. Since his malpractice action against the firm was not timely, his action is barred.

Plaintiff claims that *Dowker v Peacock,* 152 Mich App 669; 394 NW2d 65 (1986), supports his position. In *Dowker,* the plaintiff contacted the defendant attorneys to help him recover payment from one Wayne Harding for construction work done on Harding's home by the plaintiff's business. *Dowker, supra,* p 671. In February, 1980, the defendants filed a claim of lien on the Harding property and a lawsuit against Harding in circuit court. *Id.* The lien was defective, and the defendants withdrew it in April, 1980, but the lawsuit continued. *Id.* After the plaintiff informed defendants that he no longer wished them to represent him, he retained other counsel, and the lawsuit proceeded to trial in June, 1984. On June 15, 1984, Harding filed a bankruptcy petition, listing the plaintiff as an unsecured creditor. The circuit court trial was thereupon halted and removed from the calendar before it was concluded. *Id.* This Court held that the plaintiff did not discover or have reason to discover the defendants' alleged negligence until June 15, 1984, the day Harding

filed for bankruptcy. *Id.,* p 675. Until that day, the plaintiff suffered no harm from the defendants' filing of a defective lien, as the outcome of the circuit court action, which was the plaintiff's alternate avenue of relief, could have been favorable to the plaintiff and could have resulted in a judgment lien for the plaintiff. It was only when Harding filed for bankruptcy that the lack of a valid construction lien caused identifiable loss to the plaintiff. *Id.,* p 673.

I believe *Dowker* is distinguishable from the instant case. The plaintiff in *Dowker* had an alternate avenue for relief, i.e., the circuit court action, and the plaintiff thus did not suffer any harm from the defective lien until the circuit court action, which could have resulted in a judgment lien, was terminated by Harding's bankruptcy. In the instant case, as in *Luick,* there was no alternate remedy, only an appeal.

Thus, I feel that the trial court did not err in granting summary disposition in favor of the law firm in the instant case, based on the statute of limitations.