HASSELBACH v TG CANTON, INC

Docket No. 157962. Submitted May 5, 1994, at Detroit. Decided October 20, 1994; approved for publication March 22, 1995, at 9:00 A.M.

Helen M. Hasselbach, individually and as representative of the estate of her deceased husband, Freeman G. Hasselbach, and Blue Cross and Blue Shield of Michigan brought an action in the Wayne Circuit Court against TG Canton, Inc., Group Five Management, State Industries, Inc., Robertshaw Controls Company, Major Mechanical Company, and Lawrence M. Wilson, seeking damages for injuries suffered when Helen fell while showering her husband in the bath tub of their apartment as a result of her husband moving suddenly because of allegedly scalding water coming from the shower head. The claim with respect to the owners of the apartment building, TG Canton and Group Five, and the plumbers who installed the plumbing in the apartment building, Major Mechanical and Lawrence Wilson, was based on the failure to install a temperature-limiting shower valve as required by the plumbing code and on the doctrine of res ipsa loquitur. The claim against State Industries, manufacturer of the water heater in the apartment building, and Robertshaw Controls, manufacturer of the thermostat on that water heater, was that the thermostat allowed the water in the water heater to reach excessive temperatures. The court, Richard P. Hathaway, J., granted summary disposition for the defendants on the basis that there was no material question of fact and that the defendants were entitled to a judgment as a matter of law. The plaintiff appealed.

The Court of Appeals held:

1. The plaintiff's claim that the owners of the apartment building were liable because they failed to install a temperature-limiting valve for the shower head was not supported by the pleadings. The pleadings fail to establish that there was a requirement to install such a valve at the time the building was built. Further, the pleadings fail to establish clearly that

REFERENCES

Am Jur 2d, Negligence § 1870.
See ALR Index under Res Ipsa Loquitur.

the water temperature, in fact, was excessive at the time of the accident. Accordingly, the plaintiff has failed to establish either that the apartment owners did not comply with the plumbing codes existing when the building was built or that the installation of the temperature-limiting valve would have prevented the accident. The doctrine of res ipsa loquitur is not applicable in the present case because the accident was not caused by an agency or instrumentality within the defendants' exclusive control. Accordingly, the trial court properly granted summary disposition for the building owners.

2. The claim against the plumbers was premised on essentially the same theories as those against the apartment owners and suffers from the same defects. Accordingly, summary disposition for the plumbers was appropriate for the same reasons.

3. The pleaded facts fail to establish that the water heater delivered water at an excessive temperature on the date of the accident. Further, the plaintiff failed to plead facts showing that the accident was caused by water of an excessive temperature and, thus, failed to show that any miscalibration in the thermostat on the water heater played any causal role with respect to plaintiff's injury. Summary disposition for the water heater manufacturer and the thermostat manufacturer was proper.

4. Although the motion for summary disposition was made two weeks before discovery was scheduled to end, the granting of summary disposition was not premature, because the plaintiff has not shown what additional discovery was contemplated in the remaining time or how such discovery would create a genuine issue of material fact.

Affirmed.

NEGLIGENCE — RES IPSA LOQUITUR — CONTROL.

The doctrine of res ipsa loquitur is applicable only where the event giving rise to the action was caused by an agency or instrumentality within the exclusive control of the defendant.

*Johnson & Johnson, P.C.* (by *Roy W. Johnson*) (*Bendure & Thomas* by *Mark R. Bendure* and *Victor S. Valenti,* of Counsel), for the plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Patrick J. Drake*), for Group Five Management.

*Varnum, Riddering, Schmidt & Howlett* (by *Joseph J. Vogan*), for State Industries, Inc.

*Plunkett & Cooney, P.C.* (by *Mary Massaron Ross* and *B. I. Stanczyk*), for Robertshaw Controls Company.

*Cardelli, Schaefer, Mason & Orlans* (by *Deborah A. Hebert*), for Lawrence M. Wilson.

*Riley P. Richard,* for Major Mechanical Company.

Before: GRIFFIN, P.J., and SAWYER and P. H. CHAMBERLAIN,* JJ.

PER CURIAM. Plaintiff appeals from an order of the circuit court granting summary disposition for defendants of plaintiff's claim arising out of a slip and fall in her apartment owned by defendants Group Five Management and TG Canton, Inc. We affirm.

Plaintiff was injured while she was assisting her eighty-five-year-old husband to take a shower. Plaintiff would turn on and adjust the water temperature before her husband entered the tub and would assist her husband in washing his back and legs while he stood facing the shower head. On the day in question, while she was washing his back, her husband said, "Shut that damn hot water off, it's scalding me." According to plaintiff, while she reached over and was turning the water off, her husband backed away from the water stream, knocking her down, and fell on top of her, breaking her leg. Plaintiff did not feel any of the water hit her, and her husband was not injured either in the fall or by the water.

Plaintiff first argues that the trial court erred in granting summary disposition in favor of the owners of the apartments, defendants TG Canton and

* Circuit judge, sitting on the Court of Appeals by assignment.

Group Five Management. We disagree. A party opposing a motion for summary disposition under MCR 2.116(C)(10) has the burden of showing, by affidavit or other documentary evidence, that there is a genuine issue of material fact. *Mirza v Maccabees Life & Annuity Co,* 187 Mich App 76, 80; 466 NW2d 340 (1991). In at least one critical respect, plaintiff is unable to do so. Specifically, the success of plaintiff's claim against the landlord is dependent upon showing that there was a sudden surge of hot water from the shower head, thus setting in motion the events which followed. Plaintiff, however, is unable to come forth with any factual showing that there was such a surge in water temperature. Plaintiff testified that she was never touched by the water, and thus cannot testify concerning how hot the water was or whether there was a surge in the water temperature, nor is there any evidence that such surges had ever occurred before or since this incident so as to establish a pattern of this happening. For all the record discloses, the water simply was adjusted too hot to begin with, and Mr. Hasselbach merely set into motion the subsequent events after expressing his displeasure with the water temperature. There is not, however, any evidence to suggest that there was ever an increase in the water temperature once the shower began.

Plaintiff does suggest that the landlord's liability is premised at least in part on not having installed a shower valve capable of preventing the high temperature on the water flow in the shower from exceeding 110 degrees Fahrenheit. Plaintiff's argument in this respect, however, is flawed for two reasons. First, in support of plaintiff's argument that the landlord was obligated to install such a shower valve, plaintiff attaches to her brief excerpts from the plumbing section of the Building

Officials and Code Administrators code, from what appears to be the 1990 version of the BOCA plumbing code, as well as an excerpt from the administrative rules, specifically 1989 AACS, R 408.30701, which adopts the 1987 version of the BOCA National Plumbing Code.[1] Moreover, plaintiff does not inform us of what the plumbing code required when the building was constructed. Thus, the restrictions on shower valves which are capable of limiting the water temperature to 110° F may or may not have been part of the 1987 BOCA National Plumbing Code adopted by the administrative rule and may or may not have been a requirement of the plumbing code at the time the apartment building was constructed.

A second, and equally fatal, flaw is again plaintiff's inability to bring forth any evidence of what the water temperature was at the time of the accident. While plaintiff has brought forth evidence to show that the shower was capable of producing water as hot as 154° F when just the hot water tap was turned on in the bathtub, that certainly does not mean that the water was that temperature at the time of the accident. As far as the record shows, the temperature in the shower may well have been at or below 110° F when Mr. Hasselbach expressed his discomfort and stepped back away from it. If this were the case, the installation of a temperature-limiting shower valve would have made no difference.

Accordingly, because plaintiff has failed to show the precise terms of the plumbing code that the

---

[1] Plaintiff does append an excerpt from the 1987 BOCA National Plumbing Code. However, the excerpt appended by plaintiff does not include any requirement concerning the high limit temperature on the water flow from the shower head. Rather, the code section appended by plaintiff appears to apply only to multiple or gang-type showers, as well as individual showers in buildings other than dwellings, but not to individual showers within dwellings.

landlords were obligated to follow and what the temperature of the water in fact was that caused Mr. Hasselbach to back into his wife, plaintiff is unable to establish either that defendants were obligated to install such a shower valve or that even if such a shower valve had been installed, it would have prevented this accident.

Additionally, plaintiff argues that the doctrine of res ipsa loquitur should apply. We disagree. The doctrine of res ipsa loquitur requires, inter alia, that the event must have been caused by an agency or instrumentality within the exclusive control of the defendant. *Wilson v Stilwill,* 411 Mich 587, 607; 309 NW2d 898 (1981). In the case at bar, however, the event was not caused by an agency or instrumentality within defendants' exclusive control. Specifically, a possible explanation of the events leading up to this accident is that plaintiff, in attempting to turn down the hot water, actually turned the hot water up. The fact that plaintiff denies having turned the hot water up instead of down does not change the fact that the instrumentality was not exclusively within defendants' control and, therefore, the doctrine of res ipsa loquitur does not apply.

For the above reasons, plaintiff has failed to bring forth a sufficient factual showing to support her claim, and, therefore, the trial court correctly determined that no genuine issue of material fact exists and properly granted summary disposition in favor of defendants TG Canton and Group Five Management.

Plaintiff also argues that the trial court erred in granting summary disposition for defendant Major Mechanical, the installer of the hot water heater and the contractor who completed the final hookup of the plumbing system. Plaintiff acknowledges that her claim against Major Mechanical is prem-

ised on essentially the same theories as presented against the apartment complex itself. Accordingly, it suffers from the same defects, and, therefore, summary disposition for defendant Major Mechanical was appropriate for the same reasons.

Next, we turn to plaintiff's argument that summary disposition for defendants State Industries, Inc., the manufacturer of the water heater, and Robertshaw Controls Company, the manufacturer of the thermostat on the water heater, was erroneous. It was not. In support of her argument against defendants State Industries and Robertshaw Controls, plaintiff points to the fact that the thermostat on the hot water heater was apparently set to 135° F, while the actual temperature of the water in the hot water heater was subsequently measured at 156° F. Plaintiff's theory, however, suffers from two flaws. First, plaintiff is unable to show that the temperature in the heater was in fact higher than 135° F on the day of the accident, and, more to the point, plaintiff still suffers from the inability to show what the temperature of the shower stream was at the time of the accident. That is, the fact that the water heater may have been capable of delivering water with a temperature in excess of 135° F is not relevant to this accident unless the water flowing from the shower was, in fact, at a temperature in excess of 135° F. Because plaintiff is unable to show factually that the water temperature was excessive, she will be unable to show that any miscalibration in the thermostat on the hot water heater played any role in the causation of this accident.

Finally, we consider plaintiff's argument that summary disposition was inappropriate because discovery was not yet complete. While plaintiff is correct that summary disposition under MCR

2.116(C)(10) ordinarily should not be granted before discovery is complete, it is proper before discovery is complete if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position. *Prysak v R L Polk Co,* 193 Mich App 1, 11; 483 NW2d 629 (1992).

In the case at bar, discovery was set to be completed by October 9, 1992. The motion for summary disposition was heard two weeks before that, on September 25, 1992, and the order granting summary disposition was not entered until October 9. Moreover, the October 9 date for cutoff of discovery was a ninety-day extension from the original cutoff date and that extension was requested by defendant Robertshaw Controls, not by plaintiff. Furthermore, plaintiff does not disclose what additional discovery had been contemplated for those final two weeks or what could have been discovered by plaintiff in those two weeks to create a genuine issue of material fact. Indeed, the primary factual flaws in plaintiff's case, the inability to show either the temperature of the water that flowed from the shower head on Mr. Hasselbach and that there was a change in the water temperature as it flowed, would not appear to be discoverable inasmuch as plaintiff testified in her deposition that the water never touched her and Mr. Hasselbach is now deceased. Certainly plaintiff offers no concrete answer to what would have been found in those final two weeks of discovery to answer that question. Accordingly, we conclude that under the facts of this case, it was not premature for the trial court to grant summary disposition.

In sum, this case may be best summed up by the following comments by the Supreme Court in its recent opinion in *Skinner v Square D Co,* 445 Mich 153, 164-165, 172-173; 516 NW2d 475 (1994):

We want to make clear what it means to provide circumstantial evidence that permits a reasonable inference of causation. As *Kaminski* [v *Grand Trunk W R Co,* 347 Mich 417; 7 NW2d 899 (1956)] explains, at a minimum, a causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.

\* \* \*

Of course, the plaintiffs' offered scenario is a *possibility.* However, so are countless others. As explained above, causation theories that are mere possibilities or, at most, equally as probable as other theories do not justify denying defendant's motion for summary judgment.

Affirmed. Defendants may tax costs.