MITCHELL v DOUGHERTY

Docket No. 218820. Submitted July 19, 2001, at Detroit. Decided February 8, 2002, at 9:05 a.m.

Cara and Larry Mitchell brought an action in the Wayne Circuit Court against John C. Dougherty, Robin H. Kyle, and Schneider, Miller & Lim, P.C. (formerly known as Dougherty, Schneider & Miller, P.C.) alleging legal malpractice. The plaintiffs had retained Dougherty and Kyle on a contingent fee basis to pursue medical malpractice claims against Family First Clinic and Oakwood Hospital relating to Cara Mitchell's treatment for cancer. Although Dougherty was a principal of Dougherty, Schneider & Miller, P.C., and Kyle was of counsel to the firm, the contingent fee agreement between these attorneys and the plaintiffs made no mention of the law firm. Dougherty and Kyle left Dougherty, Schneider & Miller, P.C., to form a new firm, continued to represent the plaintiffs, negotiated a settlement of the plaintiffs' claim against Family First Clinic, but did not file an action against Oakwood. The plaintiffs, in their own behalf, filed an action against Oakwood that was dismissed as being barred by the statute of limitations. In their legal malpractice action, the plaintiffs alleged that they had a valid medical malpractice action against Oakwood, that the defendants had negligently failed to file a complaint against Oakwood before the expiration of the period of limitation, that the defendants had failed to inform the plaintiffs of the correct date of the expiration of the limitation period, and that the defendants had negligently induced the plaintiffs to settle the claim against Family First Clinic at an amount less than that to which the plaintiffs were entitled. The court, Louis F. Simmons, Jr., J., granted summary disposition for the defendants. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court did not err in granting summary disposition for Dougherty and Kyle with respect to the plaintiffs' claim that these attorneys were negligent in failing to file a malpractice action against Oakwood. Dougherty and Kyle exercised reasonable skill, care, discretion, and judgment in determining that the plaintiffs' claim against Oakwood was not worth pursuing, given that Dougherty and Kyle were unable to locate an expert who would testify in

support of the plaintiffs' allegation of medical malpractice by Oakwood, and given that the plaintiffs presented no evidence that the measures Dougherty and Kyle took in investigating the plaintiffs' claim were less than an attorney of ordinary learning, judgment, or skill would have done under the same or similar circumstances. The plaintiffs presented no evidence that Dougherty and Kyle's determination that the case against Oakwood was not worth pursuing was anything other than an honest belief well founded in the law and in the best interests of their clients.

2. The trial court did not err in granting summary disposition for Dougherty and Kyle with respect to the plaintiffs' claim that these attorneys negligently failed to inform the plaintiffs of the date the limitation period would expire on the claim of medical malpractice by Oakwood. The trial court correctly determined that no genuine issue of fact existed regarding whether Dougherty and Kyle informed the plaintiffs of the correct date of the expiration of the limitation period, given that Cara Mitchell's contradictory testimony regarding the matter cannot create an issue of fact.

3. The trial court did not err in granting summary disposition for Schneider, Miller & Lim, P.C. This law firm ceased to represent the plaintiffs when Dougherty and Kyle left the firm to form their new firm, taking the plaintiffs with them as clients. The plaintiffs' intent to terminate representation by the predecessor of Schneider, Miller & Lim, P.C., can be implied from the plaintiffs' actions or inactions. Where a firm ceases to represent a client and the client acquires new counsel before the applicable limitation period expires, the firm is not liable for the failure to file an action before the expiration of the limitation period. The plaintiffs' decision to continue representation by Dougherty and Kyle at their new firm was the functional equivalent of retaining a new attorney. Accordingly, Schneider, Miller & Lim, P.C., is not liable for the failure to file a timely action against Oakwood.

Affirmed.

1. ATTORNEY AND CLIENT — MALPRACTICE — STANDARD OF CARE.

An attorney owes a client an implied duty to act as an attorney of ordinary learning, judgment, or skill would under the same or similar circumstances; an attorney is not a guarantor of the most favorable possible outcome, nor must an attorney exercise extraordinary diligence or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession; an attorney who acts in good faith and with an honest belief that the attorney's acts and omissions are well founded in law and are in the best interest of the client is not answerable for mere errors in judgment.

2. ATTORNEY AND CLIENT — IMPLIED TERMINATION OF RELATIONSHIP.

A client's termination of an attorney-client relationship can be implied from the client's actions or inactions.

3. ATTORNEY AND CLIENT — FAILURE TO FILE TIMELY ACTIONS — RETENTION OF NEW ATTORNEYS.

A law firm is not liable to a former client for failure to file an action before the expiration of the applicable period of limitation where the client acquired new counsel before the period of limitation expired.

*Goldstein Litt Slinger, P.L.L.C.* (by *Alan J. Taylor*) and *Mark L. Silverman, M.D., J.D., P.C.* (by *Mark L. Silverman*), for the plaintiffs.

*John C. Dougherty* and *Robin H. Kyle*, in propria persona.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani* and *Michael P. Ashcraft, Jr.*), for Schneider, Miller & Lim, P.C.

Before: DOCTOROFF, P.J., and MURPHY and ZAHRA, JJ.

PER CURIAM. Plaintiffs[1] appeal the trial court's orders granting summary disposition to defendants on the plaintiffs' legal malpractice claims. We affirm.

I

In June 1995, plaintiffs retained defendants[2] to investigate and pursue a medical malpractice action against several medical providers. The malpractice claim arose in part out of plaintiff Cara Mitchell's

---

[1] Cara Mitchell, who was a named plaintiff in this case, died on September 15, 2000, while this appeal was pending. For the purpose of this opinion, the term "plaintiffs" will include the decedent Cara Mitchell.

[2] The term "defendants" will be used to refer collectively to defendant attorneys John C. Dougherty and Robin Kyle and defendant law firm Schneider, Miller & Lim, P.C.

February 1995 admission to Oakwood Hospital (Oakwood).[3] Cara Mitchell was diagnosed with Hodgkin's lymphoma, a treatable form of cancer, for which her doctor prescribed the chemotherapy drug vinblastine sulfate. According to plaintiffs, on February 25, 1995, during the Oakwood admission Cara was mistakenly given the drug vincristine[4] at an excessively high dosage of nine milligrams.

At the time of plaintiffs' first meeting with attorneys John C. Dougherty and Robin Kyle (defendant attorneys) in June 1995, Dougherty was a principal in the law firm of Dougherty, Schneider & Miller, P.C., and Kyle was associated in an "of counsel" capacity with that firm. Plaintiffs entered into a contingency fee agreement with defendant attorneys; however, the written agreement made no mention of the law firm. Defendants filed a notice of intent to file a medical malpractice claim on September 18, 1995, which stated that Cara was given an excessive amount of vinblastine, but did not indicate that the drug vincristine was given in error.

In early 1996, Dougherty left the law firm and informed plaintiffs that he would be starting his own firm in which Kyle would be a partner. Following Dougherty's departure, the firm changed its name to Schneider, Miller & Lim, P.C. (defendant law firm). Defendant attorneys continued to represent plaintiffs after leaving the firm, and there is no indication in the record that plaintiffs objected to this arrangement. According to Kenneth M. Schneider, the law firm of Schneider, Miller & Lim, P.C., did not perform any

---

[3] Plaintiffs also pursued a medical malpractice action against Family First Clinic for failing to diagnose Cara's lymphoma.

[4] Apparently, vinblastine and vincristine are both chemotherapy agents.

professional services for plaintiffs following Dougherty's departure from the firm.

Although defendant attorneys filed a medical malpractice complaint on plaintiffs' behalf against Family First Clinic, they informed plaintiffs that they were unable to locate an expert who would support a medical malpractice action against Oakwood. Plaintiffs filed an in propria persona complaint against Oakwood in August 1997, believing that they had until the end of that month to initiate an action against Oakwood. However, the applicable limitation period for plaintiffs' claim against Oakwood expired in February 1997.

On December 26, 1997, plaintiffs filed the present legal malpractice action against defendants. Plaintiffs claimed that they had a valid medical malpractice action against Oakwood based on the alleged overdose of vincristine, and defendants negligently failed to file a complaint before the expiration of the period of limitation. Plaintiffs also alleged that defendants failed to inform them of the correct date the limitation period on their medical malpractice claim against Oakwood would expire. Plaintiffs further asserted that defendants negligently induced them to settle their claim against Family First Clinic for a sum less than that to which they were entitled.

Defendant law firm filed a motion for summary disposition, arguing that they could not be held liable for the alleged malpractice of defendant attorneys. The law firm claimed that it no longer represented plaintiffs after defendant attorneys left the firm, and the malpractice alleged in this case occurred after their representation ceased. At an October 1998 hearing, the trial court granted defendant law firm's motion

and entered an order on November 13, 1998, dismissing with prejudice plaintiffs' case against the firm.

Defendant attorneys also filed a motion for summary disposition in November 1998. In their motion, the attorneys argued that plaintiffs could not establish a claim of legal malpractice against them because plaintiffs could not prove that they had a valid medical malpractice action against Oakwood. The attorneys claimed that there was no evidence establishing that Cara Mitchell received vincristine instead of vinblastine or that she received an overdose of vincristine. Defendant attorneys produced an affidavit of Cara's treating physician Mark Kaminski, M.D., in which he stated that his review of the records demonstrated that she received nine milligrams of vinblastine as her doctor ordered. The attorneys also produced records from Oakwood's pharmacy department indicating that the pharmacy dispensed vinblastine and a deposition of the director of Oakwood's pharmacy in which he stated that a nine-milligram dose of vincristine was so inappropriately high they would have questioned the order. Further, the attorneys produced an affidavit of James W. Albers, M.D., another one of plaintiffs' experts, stating that he could not support plaintiffs' claim that she received vincristine at Oakwood. The attorneys acknowledged that a nursing note from Cara's hospitalization stated that she received vincristine; however, in a deposition, the nurse who wrote that notation stated that she believed she made a charting error and she did administer the proper medication. The attorneys further argued that plaintiffs' claim that they induced plaintiffs to accept a low settlement amount was mer-

itless because attorneys could not be sued for exercising their professional judgment.

Plaintiffs responded to the attorneys' motion by filing affidavits from three doctors opining that the symptoms of neurotoxicity that Cara suffered indicated that, more likely than not, she received vincristine, not vinblastine at Oakwood. Plaintiffs referred the court to the deposition of Dr. Kaminsky in which he stated that it was possible that Cara received the wrong medication. Plaintiffs also argued that their medical malpractice claim was supported by Cara's recollections of her treatment, the nursing note from Oakwood that stated that Cara was administered vincristine, and the fact that Cara subsequently sought treatment at the University of Michigan Medical Center, where she was diagnosed with vincristine toxicity. Plaintiffs further noted that defendant attorneys' motion for summary disposition was premature because discovery was not complete.

The trial court took the motion under advisement and issued a written opinion in February 1999 partially denying and partially granting the motion. The court found that plaintiffs established a question of fact regarding whether Cara received vincristine or vinblastine. The court also found that there was no written evidence that defendant attorneys informed plaintiffs of the applicable limitation period. Therefore, the court concluded that summary disposition was inappropriate on plaintiff's claim that defendant attorneys violated the standard of practice by failing to file a medical malpractice claim. However, the court granted defendant attorneys' motion regarding the negligent inducement claim.

Defendant attorneys filed a motion for reconsideration on the ground that the court committed palpable error in its finding that the evidence supported plaintiffs' claim that Cara received nine milligrams of vincristine. According to the attorneys, the nursing note indicated only that she received vincristine and did not specify a dosage, plaintiffs' experts never testified that Cara received nine milligrams, and it was undisputed that if she received only a two-milligram dose of vincristine, it would have been the proper dose. The attorneys further argued that the court erred in concluding that there was no evidence that plaintiffs were informed of the statute of limitations because Cara admitted in a deposition that she was told about the applicable two-year limitation period well before the limitation period expired. The trial court granted defendant attorneys' motion for reconsideration and entered an order on March 26, 1999, granting the motion for summary disposition and dismissing plaintiffs' complaint with prejudice.

II

In their first assertion of error, plaintiffs argue that the trial court erred in granting defendant attorneys' motion for summary disposition because plaintiffs established that they had a valid medical malpractice claim against Oakwood, and defendant attorneys were negligent for failing to pursue this claim before the limitation period expired.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of a claim. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). The reviewing court considers affidavits, pleadings, depositions, admissions, and docu-

mentary evidence filed in the action or submitted by the parties in the light most favorable to the nonmoving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The court should grant the motion only if the affidavits or other documentary evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

In order to establish a claim of legal malpractice, a plaintiff must prove (1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the plaintiff, (3) that the negligence was the proximate cause of an injury, and (4) the fact and extent of the injury alleged. *Charles Reinhart Co v Winiemko*, 444 Mich 579, 585-586; 513 NW2d 773 (1994). Further, where the alleged malpractice results from the failure to diligently pursue or timely file a client's claim, a plaintiff seeking to establish the third and fourth elements of the claim, i.e., proximate cause and damages, must show that but for the attorney's alleged malpractice she would have been successful in the underlying suit. *Id.* at 586; *Basic Food Industries v Grant*, 107 Mich App 685, 691; 310 NW2d 26 (1981).

In this case, it is undisputed that an attorney-client relationship existed between plaintiffs and defendant attorneys. At issue is whether defendant attorneys were negligent in failing to file a medical malpractice action against Oakwood before the applicable limitation period expired and whether this alleged negligent conduct resulted in damages to plaintiffs. We first examine plaintiffs' claim that defendant attorneys breached their duty to plaintiffs by failing to diligently

pursue and timely file a medical malpractice action against Oakwood.

To determine whether defendant attorneys were negligent in this case we must first examine the duty they owed plaintiffs. An attorney has an implied duty to exercise reasonable skill, care, discretion, and judgment in representing a client. *Simko v Blake*, 448 Mich 648, 655-656; 532 NW2d 842 (1995). Further, an attorney is obligated to act as an attorney of ordinary learning, judgment, or skill would under the same or similar circumstances. *Id.* at 656. However, an attorney is not a guarantor of the most favorable possible outcome, nor must an attorney exercise extraordinary diligence or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession. *Id.* Further, "where an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of [the] client, [the attorney] is not answerable for mere errors in judgment." *Id.* at 658.

Here, plaintiffs allege that defendant attorneys were negligent in failing to file a medical malpractice action against Oakwood. It is important to note that this alleged failure was not mere oversight or the result of poor case management, but rather was an affirmative decision on the part of defendant attorneys not to pursue the action. According to defendant attorneys, they investigated plaintiffs' claims against Oakwood and determined, in their professional opinion, that the case was not worth pursuing.

Plaintiffs do not dispute whether defendant attorneys conducted an investigation into the merits of their case. Instead, plaintiffs argue that defendant attorneys' determination that the case against Oak-

wood was not worth pursuing is clearly negligent because plaintiffs' counsel in this legal malpractice action was able to locate more than one expert who would testify that the treatment Cara Mitchell received at Oakwood constituted medical malpractice. Further, plaintiffs stress that there were issues of fact regarding whether Cara was given an excessive dosage of the incorrect medication. However, the critical question here is not whether plaintiffs would have ultimately prevailed on their medical malpractice claim. Rather, the issue is whether defendant attorneys exercised reasonable skill, care, discretion, and judgment when they determined that plaintiffs' claim was not worth pursuing. *Simko, supra* at 655-656.

Here, the attorneys' opinion on the merit of plaintiffs' case was influenced in part by the attorneys' inability to locate an expert physician who would support plaintiffs' claim that Oakwood's treatment of Cara Mitchell was negligent. In addition, defendant attorneys point to the inherent conflicts in the evidence regarding whether Cara received either an incorrect medication or an incorrect dosage. Plaintiffs admitted that defendant attorneys informed them of their decision to file a complaint against Family First Clinic only and their reasons for not naming Oakwood in the suit.

Although it is true that plaintiffs' present counsel was able to obtain the affidavits of experts supporting plaintiffs' medical malpractice claim, this evidence does not negate the fact that defendant attorneys sought the opinion of an expert and received an opinion that was not favorable. The necessity of obtaining the testimony of an expert physician to support alle-

gations of medical malpractice is codified in MCL 600.2912d and MCL 600.2169, and factual disputes without an expert opinion are insufficient to initiate, let alone maintain, a medical malpractice action. Given the high standard for pursuing medical malpractice claims in this jurisdiction, we cannot fault defendant attorneys' reluctance to bring a malpractice action where they were unable to obtain the supportive testimony of a physician.

Plaintiffs present no evidence that the measures that defendant attorneys took in investigating plaintiffs' claims were less than an attorney of ordinary learning, judgment, or skill would have done under the same or similar circumstances. *Simko, supra.* In essence, plaintiffs allege that defendant attorneys erred in their judgment that plaintiffs' medical malpractice claim against Oakwood was without merit. Although "gross" errors in judgment can be actionable, *Basic Food, supra* at 694, mere errors in judgment by attorneys acting in good faith are not. *Simko, supra* at 658. Plaintiffs presented no evidence that defendant attorneys' determination that the case was not worth pursuing was anything other than an honest belief well founded in the law and in the best interest of their clients. *Simko, supra* at 694. Although there may be a question of fact regarding the merit of plaintiffs' medical malpractice action, we decline to create precedent whereby an attorney is obligated to file suit whenever there is some scintilla of evidence supporting the client's claim.

Plaintiffs also allege that defendant attorneys were negligent in failing to properly inform them when the limitation period on their medical malpractice action would expire. In support of this argument, plaintiffs

cite Cara's testimony in which she claimed that defendant attorneys told her that the limitation period would expire in August 1997. It is undisputed that plaintiffs' claim expired in February 1997. However, Cara also admitted that defendants discussed with her the two-year limitation period for her claim in 1995 or 1996. Plaintiffs cannot create an issue of fact by contradicting their own testimony. *Dykes v William Beaumont Hosp*, 246 Mich App 471, 479-480; 633 NW2d 440 (2001). We do not agree that the trial court erred in concluding that no *genuine* issue of fact existed regarding whether defendant attorneys correctly informed plaintiffs of the date on which the limitation period expired.

Because we conclude that plaintiffs failed to establish that defendant attorneys' decision not to pursue a medical malpractice action against Oakwood was a breach of their professional duty to plaintiffs, we do not reach the issue whether the alleged negligence injured plaintiffs. We find no error in the trial court's decision to grant summary disposition of plaintiffs' claims against defendant attorneys.[5]

### III

In their second assertion of error, plaintiffs claim that the trial court should have denied defendant law firm's motion for summary disposition because an

---

[5] From a review of the lower court record, it appears that the trial court granted defendant attorneys' motion for summary disposition because plaintiffs failed to prove that they would have prevailed on their medical malpractice claim. Regardless of the rationale for the trial court's decision, we conclude that summary disposition was warranted, and will not reverse where the trial court reached the correct result for the wrong reason. *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 150; 624 NW2d 197 (2000).

attorney-client relationship existed between plaintiffs and the law firm at the time of the alleged malpractice. Specifically, plaintiffs argue that at the time they signed the contingency agreement with defendant attorneys, the attorneys were acting in a representative capacity for the firm, and the attorneys' disassociation with the firm did not terminate the relationship between plaintiffs and the firm. Although there is case law addressing the liability of attorneys whose representation is clearly terminated by the client or the court, it appears that the particular situation in this case has not been examined by this Court.

A client's employment of one member of a law firm is generally deemed to be employment of the firm itself. MCR 2.117(B)(3); *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 329; 536 NW2d 886 (1995). Defendant law firm does not dispute that an attorney-client relationship existed between it and plaintiffs at the time that plaintiffs entered into a contingency fee agreement with defendant attorneys. Instead the firm argues that its representation of plaintiffs ceased when defendant attorneys left the firm and assumed responsibility for plaintiffs' case.

Defendant law firm further argues that where a firm ceases to represent a client and the client acquires new counsel before the applicable limitation period expires, the firm is not liable for the failure to file an action before the expiration of the limitation period, citing *Boyle v Odette*, 168 Mich App 737; 425 NW2d 472 (1988). In *Boyle*, the plaintiff hired the defendant to represent her regarding injuries from an accident with an underage driver who was under the influence of alcohol. The defendant negotiated a settlement with the driver's no-fault insurer in February

1984. In July 1985, the plaintiff retained new counsel to pursue further claims arising out of the accident. The plaintiff's new attorney filed a dramshop action against the reception hall where the driver consumed the alcoholic beverages; but the case was dismissed, purportedly because the applicable limitation period had expired. The plaintiff then sued the defendant, alleging that he committed legal malpractice by failing to pursue and timely file the dramshop action. The plaintiff later sought to amend her complaint to allege that the defendant was negligent for failing to file a social host claim against another party.

The trial court denied the plaintiff's request to amend her complaint because the applicable limitation period for the social host claim had not expired at the time the plaintiff retained new counsel and there was no merit to the claim. On appeal, this Court found that the trial court did not abuse its discretion in denying the plaintiff's request to amend her complaint because the amendment was futile. *Boyle, supra* at 746. We concluded that the defendant could not be held liable for failing to file the social host claim where he had ceased to represent the plaintiff and was replaced by other counsel before the applicable limitation period expired on the claim. *Id.* at 745.

On the basis of our holding in *Boyle,* we would agree with defendant law firm that it could not be liable for the failure to pursue or timely file a claim where its representation of plaintiffs had ceased before the applicable period of limitation expired on the claim. However, there is a critical distinction between this case and the facts of *Boyle.* In *Boyle,* it was clear that the plaintiff, by retaining alternate counsel, had terminated her attorney-client relationship with the defendant before the limitation period

expired. Retention of an alternate attorney effectively terminates the attorney-client relationship. *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994). However, in this case, plaintiffs did not retain alternate counsel. Rather, they maintained their relationship with defendant attorneys after the attorneys' separation from defendant law firm. At no time did plaintiffs formally terminate their representation by defendant law firm. Therefore, the question we must address here is whether the attorney-client relationship between plaintiffs and defendant law firm was terminated and, if it was, when that termination occurred.

Generally, when an attorney is retained to represent a client, that representation continues until the attorney is relieved of the obligation by the client or the court. *Id.* at 450; *Stroud v Ward*, 169 Mich App 1, 6; 425 NW2d 490 (1988).[6] Plaintiffs argue that the authority cited by defendant law firm in support of its position that plaintiffs terminated their relationship with the firm is inapplicable to the instant case because none of the cases address the situation where an attorney leaves a firm and continues to represent someone who was a client of the firm. It appears that plaintiffs are correct that this case presents a situation not directly addressed by this Court.[7] Plaintiffs further claim that they did not termi-

---

[6] An exception to this general rule exists where the attorney is retained to perform a specific legal service, such as the sale of a business. See *Chapman v Sullivan*, 161 Mich App 558, 561-562; 411 NW2d 754 (1987). In those circumstances, no formal discharge is required and the representation ceases when the specific legal service is completed. *Id.*; *Maddox, supra* at 450. It is apparent that this exception does not apply to the instant case.

[7] We note that *Hayden v Green*, 166 Mich App 352; 420 NW2d 201 (1988), presented a similar situation. In *Hayden*, the plaintiff retained the

nate their attorney-client relationship with defendant law firm because they did not clearly indicate that they were releasing defendant law firm from its obligation to represent them.

However, contrary to plaintiffs' assertions, no formal discharge by the client is required, and the termination of an attorney-client relationship can be implied by the actions or inactions of the client. As stated above, the retention of alternate counsel is sufficient proof of the client's intent to terminate the attorney's representation. *Maddox, supra; Stroud, supra.* This Court has also held that a client terminated his attorney's representation by sending a letter stating that the attorney did not have authority to act on his behalf. *Hooper v Hill Lewis*, 191 Mich App 312, 315; 477 NW2d 114 (1991). See also *Basic Food Industries, Inc v Travis, Warren, Nayer & Burgoyne*, 60 Mich App 492, 497; 231 NW2d 466 (1975) (an instruction by the plaintiff's corporate president that the attorneys were to perform no further services for the plaintiff relieved the attorneys of their obligation to represent the plaintiff). Further, where a client obtained legal advice from an attorney, then had no further contact with that attorney until filing a complaint for legal malpractice, we held that the client

---

defendant attorney while the attorney was associated with the defendant law firm. The attorney subsequently left that firm and continued to represent the plaintiff. The plaintiff later sued the defendants for malpractice. However, in *Hayden*, we did not address whether the law firm's representation of the client continued after the attorney left the firm because the alleged malpractice occurred while the attorney was still associated with the firm. Further, *Hayden* was reversed by our Supreme Court in *Hayden v Green*, 431 Mich 878 (1988), for reasons stated in the dissent of Judge Hood. In his dissent, Judge Hood appears to conclude that the law firm's representation of the client ceased when the attorney ended his association with the firm, a holding that would tend to support defendant law firm's argument. *Hayden, supra* at 166 Mich App 361.

relieved the attorney of his obligations on the date the attorney last advised the client. *Seebacher v Fitzgerald, Hodgman, Cawthorne & King, PC*, 181 Mich App 642, 647; 449 NW2d 673 (1989). See also *K73 Corp v Stancati*, 174 Mich App 225, 229; 435 NW2d 433 (1988) (an attorney was relieved of his obligation to the client on the date of the final billing where the attorney had no further contact with the client regarding the subject matter of the representation).

In view of the precedent establishing that an attorney-client relationship can be terminated by implication, we conclude that the facts of this case show the intent of plaintiffs to terminate their relationship with defendant law firm. Defendant attorneys ceased their association with defendant law firm in January 1996, and plaintiffs were aware that defendant attorneys would be partners in a new law firm.[8] After defendant attorneys left defendant law firm, the firm did not provide any further professional services for plaintiffs. There is no evidence that plaintiffs either objected to representation by defendant attorneys through their new law firm or sought to continue representation by defendant law firm. Although plaintiffs did not retain "new" counsel, plaintiffs' decision to continue their representation with defendant attorneys at a new firm rather than remain with defendant law firm was the functional equivalent of retaining a new attorney.[9] On these facts, we find that plaintiffs

---

[8] Contrary to plaintiffs' characterization of defendant attorneys' separation from defendant law firm as a "change of address," there is no dispute that defendant attorneys ended their professional associations with defendant law firm.

[9] Plaintiffs assert that no termination occurred here because they did not establish a "new, separate, and distinct attorney-client relationship," citing *Lipton v Boesky*, 110 Mich App 589, 599; 313 NW2d 163 (1981). In Lipton, this Court held that the appearance of alternate counsel at a hear-

relieved defendant law firm of its obligation to represent them when defendant attorneys ended their association with the law firm in January 1996.

On the basis of our conclusion that plaintiffs terminated their attorney-client relationship with defendant law firm, we further conclude that the application of our holding in *Boyle, supra*, to the present case supports the trial court's decision to grant defendant law firm's motion for summary disposition. The limitation period for plaintiffs' medical malpractice claim against Oakwood expired on February 25, 1997, more than a year after plaintiffs terminated their attorney-client relationship with defendant law firm in January 1996. Because defendant law firm cannot be liable for the failure to pursue or timely file plaintiffs' claim, the trial court did not err in concluding that defendant law firm was entitled to judgment as a matter of law.[10]

Affirmed.

---

ing was not sufficient proof of the termination of the attorney-client relationship. *Id.* We find that *Lipton* does not support plaintiffs' claim where the issue in that case was whether the defendant sufficiently alleged the termination of the attorney-client relationship, not whether the existence of alternate counsel terminated the relationship as a matter of law. Further, even if *Lipton* stood for the proposition that only the retention of a new, distinct, and separate attorney is sufficient to terminate an existing attorney-client relationship, the holding of *Lipton* is not controlling. See MCR 7.215(I)(1).

[10] Plaintiffs also argue that summary disposition was inappropriate where discovery had not concluded in the case, citing *Hasselbach v TG Canton, Inc*, 209 Mich App 475, 481-482; 531 NW2d 715 (1995). Although summary disposition normally should not be granted before discovery is complete, it may be proper if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's claim. *Id.* Here, plaintiffs do not assert what facts supporting their claim might have been revealed through further discovery. Therefore, we reject this argument.