*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GLOBAL EQUIPMENT GROUP, LLC,

        Plaintiff-Appellant,

v

VARNUM LLP,

        Defendant-Appellee.

UNPUBLISHED
January 20, 2022

No. 355629
Washtenaw Circuit Court
LC No. 20-000351-NM

Before: O'BRIEN, P.J., and STEPHENS and LETICA, JJ.

PER CURIAM.

In this legal malpractice action, plaintiff appeals by right the trial court's order granting defendant's motion for summary disposition on the ground that the action was barred by the statute of limitations, MCR 2.116(C)(7). We reverse and remand for proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff acts as a broker and advertises new and used machinery for sale. Since 2010, defendant represented plaintiff in its legal matters. In July 2016, a breach of contract action was filed against plaintiff in New Mexico ("the New Mexico lawsuit") by Phillip Arellano and ACE Granite Innovations, LLC. However, defendant found local counsel, David Lutz, to assist with the New Mexico lawsuit. On January 23, 2017, Lutz e-mailed Jeffrey Koelzer of defendant law firm and advised that the motion to dismiss the New Mexico lawsuit premised on a forum-selection clause in the underlying contract was denied. On January 25, 2017, Koelzer responded to Lutz's e-mail and expressed disappointment with the ruling, noting that "we gave it our best shot." Koelzer indicated that he would contact plaintiff, apprise it of the ruling, and "suggest" that plaintiff work directly with Lutz to keep costs down. Jeffrey Dunholter, the founder and principal of plaintiff, was not included on these e-mails.

On June 15, 2017, Lutz sent an e-mail to Dunholter, stating that he was "hired" by Koelzer to serve as local counsel for the New Mexico lawsuit and there was a pressing deadline approaching, a court-ordered mediation scheduled for June 28, 2017. Lutz stated that he never received a signed engagement letter from plaintiff and that "my correspondence has recently been

getting returned."[1] That same day, Dunholter forwarded the e-mail to Peter Roth of defendant law firm with the message, "What is this about? I'm lost here…." Roth e-mailed Dunholter on June 19, 2017, advising that Lutz was the local counsel for the New Mexico lawsuit and that defendant was not working on the case to avoid two sets of fees. However, Roth would be happy to be involved and would call Dunholter to discuss the matter. On June 22, 2017, Lutz sent a letter to Dunholter via facsimile indicating that he was withdrawing as counsel for plaintiff in the New Mexico lawsuit. The withdrawal was premised on plaintiff's failure to sign an engagement letter with him, the failure to make any recent payments, and the failure to respond to phone calls or e-mails.

On June 26, 2017, Koelzer wrote Lutz, acknowledging that he was aware of Lutz's intent to withdraw from the New Mexico lawsuit. He inquired if it would be possible to obtain an extension of the mediation deadline and if Lutz could recommend successor counsel. That same day, Lutz advised in an e-mail that he filed a motion for protective order, the mediation date was vacated, but a deposition was scheduled for July 12. He recommended Damian Martinez of the Holt Mynatt Martinez law firm. After Koelzer asked Lutz to facilitate a phone conference, Lutz advised that Martinez was out of the office that week, but Lutz asked another member of the firm to call him back. On July 10, 2017, Lutz was granted permission to withdraw. In the documentary evidence submitted, there is no indication that plaintiff or defendant retained Martinez or another attorney for the New Mexico lawsuit. On August 18, 2017 a default judgment was entered against plaintiff, and on November 14, 2017, a final order and judgment was entered in the amount of $366,201.62, of which $300,000 was punitive damages.

Plaintiff allegedly learned that defendant failed to retain replacement counsel and failed to monitor and handle the New Mexico lawsuit after it was served with a motion by Arellano to domesticate the foreign judgment in Michigan state court. Plaintiff and defendant had begun preparations to defend against this matter. Specifically, on March 15, 2018, Dunholter sent an e-mail to Steven T. Buquicchio of defendant law firm advising that the hearing was set for March 28, 2018, and he needed an update. In his answer, Buquicchio wrote that the motion was "calendared and docketed," a response would be filed before the hearing, and an associate would contact Dunholter to discuss the facts and timelines. Also, in this e-mail, he advised that plaintiff had outstanding invoices from defendant that needed to be brought current.

That same day, Dunholter e-mailed a response to the request for payment, indicating that plaintiff would pay for the services rendered. However, he requested "consideration" for the fact that the circumstances were caused by miscommunication at defendant law firm. Specifically, Dunholter noted that a review of New Mexico public court records disclosed that Lutz withdrew without notice provided to plaintiff and the default judgment was entered because no attorney appeared on plaintiff's behalf. Dunholter requested a commitment from defendant that it would consider covering the legal costs to handle "this matter," or indemnification through malpractice

---

[1] Dunholter explained a lack of communication in that Lutz may have been contacting Dunholter's former partner who sold his share of the business. Additionally, Dunholter alleged that defendant gave Lutz an invalid business address because plaintiff had moved to Grand Rapids. However, defendant's attorneys also represented to Lutz that it was difficult to communicate with Dunholter.

insurance. He indicated that his small company could not risk losing "everything," particularly in light of the legal fees it had paid to defendant over the years. Dunholter requested an answer by the next day, March 16, 2018.

When he did not receive a response to this e-mail, Dunholter wrote to defendant on March 19, 2018, indicating that he did not want to wait until the deadline of March 28, 2018, to learn of defendant's position. Therefore, plaintiff's representatives had scheduled a meeting with another attorney to learn of their alternatives. Dunholter indicated his preference to not meet with another law firm, but requested a response in writing addressing how the bills associated with this matter or any judgment would be handled. On March 20, 2018, Roth of defendant law firm sent an e-mail denying that defendant did anything wrong or had any responsibility for the default judgment. It was asserted that, "You retained New Mexico counsel to handle this matter and directed us that you wanted to work directly with them to avoid paying two sets of lawyers." Roth indicated that he could not provide assistance regarding plaintiff's options if it deemed defendant to be at fault. Consequently, he suggested that plaintiff proceed with its meeting and seek other counsel if it believed defendant was responsible.

Plaintiff retained new counsel and obtained favorable relief in the New Mexico lawsuit. However, it estimated expenditures of nearly $150,000 in that litigation. On April 3, 2020, plaintiff filed its complaint against defendant alleging legal malpractice for failing to properly monitor and manage the New Mexico lawsuit, failing to obtain successor local counsel, failing to provide Lutz with correct information, and failing to protect plaintiff's interests which resulted in the entry of a default and damages. In lieu of an answer, defendant moved for summary disposition under MCR 2.116(C)(7), alleging that its last role in the New Mexico lawsuit was assisting plaintiff in trying to secure new counsel which occurred in June 2017. In fact, defendant alleged that the last billing entry and rendering of services occurred on June 27, 2017. Rather, plaintiff was responsible for failing to secure new counsel and the subsequent entry of the default judgment. Furthermore, the New Mexico lawsuit ended on December 14, 2017, when the appeal period for the judgment expired. Because the statute of limitations was two years from the time the lawyer discontinued services, defendant claimed that the statute of limitations expired on June 27, 2019. However, even if defendant was deemed to continue its service until the time for filing a claim of appeal ended, the statute of limitations expired on December 14, 2019. Therefore, plaintiff's complaint filed on April 3, 2020,[2] was untimely, and summary disposition was proper in defendant's favor.

Plaintiff opposed the motion for summary disposition with documentary evidence including e-mails exchanged between the parties. Specifically, it alleged that defendants' e-mail of March 15, 2018 demonstrated that its representation of plaintiff continued. On that date, defendant advised that it had "the matter calendared and docketed," an associate was drafting a

---

[2] Plaintiff's complaint was filed on April 3, 2020. However, Michigan Governor Gretchen Whitmer issued Executive Order No. 2020-122, which lifted Executive Order No. 2020-58 that tolled the limitations period for civil actions from March 10, 2020 to June 19, 2020 due to the COVID-19 pandemic. Therefore, for the purposes of the statute of limitations, it would be as if plaintiff's complaint was filed on March 10, 2020. For the sake of clarity, we will refer to the filing date of plaintiff's complaint as March 10, 2020.

motion for relief, and Dunholter might be contacted to discuss facts and timelines. Furthermore, defendant acknowledged that the effective filing date of the complaint was March 10, 2020, because of the state of emergency declared due to the Covid-19 pandemic. Moreover, plaintiff alleged that the motion was premature prior to the commencement of discovery.

Defendant filed a reply brief. For the first time, defendant submitted that the New Mexico lawsuit and the litigation filed in Michigan were distinct actions. Specifically, it contended that there was no need to determine whether plaintiff and defendant had an attorney-client relationship pertaining to the "Michigan collections lawsuit" because plaintiff's allegation of legal malpractice in the New Mexico lawsuit had nothing to do with any alleged activity in the collection action. Further, defendant alleged that plaintiff could not use the subsequent collection action to revive its time-barred malpractice action and that discovery was futile. After hearing oral argument remotely, the trial court held that plaintiff's claim was barred by the statute of limitations and granted defendant's motion for summary disposition for the reasons stated in its brief. The trial court further denied plaintiff's motion for reconsideration. From these decisions, plaintiff appeals.

## II. ANALYSIS

Plaintiff alleges that the trial court erred when it concluded its claim was barred by the legal malpractice statute of limitations and improperly granted summary disposition in favor of defendant. We agree.

The appellate court reviews de novo a trial court's ruling that a claim is barred because of the statute of limitations, MCR 2.116(C)(7). *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 419; 684 NW2d 864 (2004). When deciding the motion, the court examines all documentary evidence submitted by the parties and accepts as true the contents of the complaint unless specifically contradicted by affidavits or documentary evidence. *Id.* "When reviewing a motion for summary disposition under MCR 2.116(C)(7), the trial court must accept the nonmoving party's well-pleaded allegations as true and construe the allegations in the nonmovant's favor to determine whether any factual development could provide a basis for recovery." *Hoffman v Boonsiri*, 290 Mich App 34, 39; 801 NW2d 385 (2010). "In the absence of a disputed fact, whether a cause of action is barred by the statute of limitations is a question of law subject to review de novo." *Magee v DaimlerChrysler Corp*, 472 Mich 108, 111; 693 NW2d 166 (2005).

MCL 600.5838 is the statute of limitations for professional malpractice claims, including legal malpractice claims. The period of limitations for a legal malpractice claim is two years. MCL 600.5805(8). Regarding when a claim accrues and the limitations period begins to run, MCL 600.5838(1) provides:

> Except as otherwise provided in section 5838a or 5838b, a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

When interpreting a statute, this Court examines the plain language of the statute and effectuates the intent of the Legislature by enforcing the statute as written. *PIC Maintenance Inc v Dep't of Treasury*, 293 Mich App 403, 408; 809 NW2d 669 (2011). "When a statute's language is clear and unambiguous, judicial construction or interpretation is not necessary or permissible, and this Court will simply apply the terms of the statute to the circumstances of the particular case." *Id*. at 408-409. "A statute is not considered ambiguous simply because reasonable minds could differ regarding the meaning of the statute." *Noll v Ritzer*, 317 Mich App 506, 511; 895 NW2d 192 (2016). "Instead, a statute is ambiguous only if it creates an irreconcilable conflict with another provision or it is equally susceptible to more than one meaning." *Id*.

As noted, MCL 600.5838(1) first provides that a cause of action against a licensed attorney "accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity." An attorney's representation of a client generally ends when he or she is relieved of the representation by the client or the court. *Estate of Mitchell v Dougherty* 249 Mich App 668, 683; 644 NW2d 391 (2002). Representation may also end upon the completion of the specific legal representation the attorney was hired to perform. See *id*. at 684-685. An attorney does not extend the beginning of the statutory period by taking actions that are a follow-up to previous services. *Bauer v Ferriby & Houston PC*, 235 Mich App 536, 539; 599 NW2d 493 (1999). When representation on an issue has been completed, a follow-up service would include a ministerial action to correct a mistake or informing a former client about a change in law affecting their previous case. *Id*. at 538-540. Additionally, when a party hires counsel that is in addition to, rather than a substitute for, its original attorney, the attorney-client relationship between the party and the original attorney is not necessarily severed. *Maddox v Burlingame*, 205 Mich App 446, 451; 517 NW2d 816 (1994). When an attorney sends a bill to a client it constitutes an acknowledgment by the attorney that the attorney was performing a legal service for the client. *Id*.

When moving for summary disposition, defendant alleged that it discontinued serving plaintiff: (1) in June of 2017, the last time in which it assisted plaintiff in securing successor counsel; (2) on June 27, 2017, the last billing entry and rendering of services pertaining to the New Mexico lawsuit; or (3) on December 14, 2017, when the appeal period for the underlying judgment expired. However, defendant failed to recognize that plaintiff's claim of legal malpractice was not contingent on the discontinuation of services, but rather, an omission in services. Specifically, defendant allegedly failed to assist plaintiff in securing successor counsel or take action to prevent the entry of the default judgment and the subsequent monetary award. These assertions of inaction occurred over many months and cannot be correlated to a specific date because they address activity that defendant allegedly should have performed, but failed to do so. Indeed, in *Biberstine v Woodworth*, 406 Mich 275, 276; 278 NW2d 41 (1979), the plaintiff retained the defendant to file a personal bankruptcy in 1970. On March 17, 1971, the original petition was filed in bankruptcy court, and on April 19, 1971, the petition was amended. However, neither petition listed a debt on the schedule owed by the plaintiff to the Michigan Motor Vehicle Accident Claims Fund. The plaintiff sought to have the defendant schedule the debt on several occasions. In fact, the plaintiff's attempt to cause the defendant to act included the filing of a request for investigation with the State Bar Grievance Board on November 22, 1971. The plaintiff's discharge in bankruptcy occurred on September 25, 1972, but the debt to the accident claim fund was not included. Consequently, the plaintiff filed the legal malpractice action on December 26, 1973. *Id*.

The circuit court concluded that the last date of service was the date the petition was amended on April 19, 1971, and the date of plaintiff's knowledge of the malpractice occurred on November 22, 1971, when the plaintiff filed a request to investigate with the grievance board. Because the parties agreed that the applicable limitations period was two years, MCL 600.5838, the court concluded that the period of limitations had expired when the plaintiff filed the malpractice action on December 26, 1973. *Id*. at 277.

The *Biberstine* Court concurred with the Court of Appeals that "when the negligence of an attorney consists of delay or inaction, a client's cause of action accrues at the time when it can be said that the attorney has had a reasonable time to act but has failed to do so." Thus, the Court concluded that the statute of limitations started to run at the time the plaintiff was discharged in bankruptcy because, until then, the defendant could have petitioned the bankruptcy court to amend the petition, obviating the plaintiff's claim for malpractice. *Id*.

In the present case, the parties did not address defendant's period of inaction and at what point defendant's attorneys had a reasonable time to act but failed to do so. The trial court is the appropriate forum to address this matter in the first place.[3] See *Apex Labs Int'l Inc v Detroit*, 331 Mich App 1, 10; 951 NW2d 45 (2020). Moreover, when a material fact question exists upon which reasonable minds may differ, the issue presents a question for resolution by the trier of fact or jury. See e.g., *Jim-Bob, Inc v Mehling*, 178 Mich App 71, 85; 443 NW2d 451 (1989); *Biberstine v Woodworth*, 81 Mich App 705, 709; 265 NW2d 797 (1978) aff'd 406 Mich 275 (1979).[4] Accordingly, we reverse the trial court's order granting defendant's motion for summary disposition and remand for proceedings consistent with this opinion.[5]

Reversed and remanded for further proceedings. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs.

/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Anica Letica

---

[3] In its reply brief, defendant alleged that the latter part of MCL 600.5838(1) addressing the discontinuation of service pertaining to "the matters out of which the claim for malpractice arose," was not satisfied because the New Mexico lawsuit was merely a collections action with no correlation to the claim of malpractice. When defendant moved for summary disposition, it failed to meet the burden of establishing entitlement to summary disposition on this ground with citation to legal authority to support its construction of the term "matters." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Furthermore, the basis of the Michigan litigation was the underlying judgment in the New Mexico lawsuit purportedly obtained through defendant's alleged legal malpractice.

[4] Because the parties did not engage in discovery, it cannot be discerned whether material factual issues are presented upon which reasonable minds could differ.

[5] In light of our resolution of the summary disposition issue, we need not address plaintiff's challenge to the motion for reconsideration decision.