*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ODELL JONES,

Plaintiff-Appellant,

v

CYRIL C. HALL, LAW OFFICES OF CYRIL C. HALL, PC, and HALL MAKLED, PC,

Defendants-Appellees.

UNPUBLISHED
August 22, 2024

No. 367375
Wayne Circuit Court
LC No. 22-013705-NM

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

In this action for legal malpractice, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants, Cyril C. Hall (Hall), Law Offices of Cyril C. Hall, PC (Hall, PC), and Hall Makled, PC (Hall Makled), under MCR 2.116(C)(7) because plaintiff's claims were barred by the statute of limitations. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The present action arises out of defendants' representation of plaintiff in litigation against 1300 Lafayette East Cooperative (1300 Lafayette), which is a non-profit cooperative housing corporation. Plaintiff and his wife, Cecily Hoagland, had been shareholders and residents of 1300 Lafayette since April 2001, and they occupied a unit on the building's top floor under an agreement that required them to pay carrying charges in exchange for the right to lease and occupy the unit. In 2011, they began to experience chronic water leaks into their unit, primarily from the roof. Other residents on the top floor of 1300 Lafayette had experienced similar leaks since at least 2002.

In October 2017, after having apparently complained about the leaks for years to no avail, plaintiff sent a letter to 1300 Lafayette's property manager indicating that he would be paying his carrying charges into an escrow account until he was personally "satisfied" that 1300 Lafayette was adequately addressing the maintenance and repair issues related to the water leaks. 1300 Lafayette subsequently initiated eviction proceedings in December 2017 against plaintiff and Hoagland in the 36th District Court for nonpayment of rent. Plaintiff retained the firm Sullivan,

-1-

Ward, Asher & Patton, P.C. as counsel. However, at some point in early 2018, plaintiff retained Hall and his firm[1] as replacement counsel.

On March 9, 2018, Hall filed a motion on plaintiff's behalf[2] in the district court to stay those proceedings. In the motion, Hall indicated that a new action had been filed on March 5, 2018, in the Wayne Circuit Court that would "resolve all issues before this Honorable Court." In the circuit court action, plaintiff and the other 1300 Lafayette residents who were also joined as plaintiffs alleged in relevant part that 1300 Lafayette had failed to keep the building in reasonable repair so as to prevent the constant water leaks. On April 9, 2018, the district court entered a stipulated order staying the district court proceedings "for reason that there is a related pending civil case at the Wayne County Circuit Court, Case No.: 18-002483-CK, and that upon its resolution, may also resolve all issues before this Court."

On June 11, 2019, plaintiff filed another action in the Wayne Circuit Court against 1300 Lafayette and other related parties. However, this complaint was filed by new counsel, Thomas P. Christy and Sarah J. Brutman with Dean & Fulkerson, P.C. The previously filed circuit court action was still pending, and the case in the district court remained stayed. The second circuit court action included defendants who were not named in the first action and did not include all of the plaintiffs from the first action. However, the factual allegations supporting the claims in the second circuit court action were substantially similar to those in the first circuit court action regarding the alleged failure to adequately maintain the building. The second circuit court action also included additional and expanded legal theories of relief.

According to an affidavit made by plaintiff and submitted in support of one of his motions in the first underlying circuit court action, and which defendants submitted as part of their pleadings in the present malpractice action, plaintiff averred that after growing frustrated with Hall's representation, he began looking for new counsel and interviewed Christy and Brutman of Dean & Fulkerson. Plaintiff averred that based on this interview, he "agreed to retain Dean & Fulkerson, P.C., (D&F) as counsel to replace Hall Makled, P.C." According to plaintiff, an order substituting Christy and Brutman as his counsel was entered in the circuit court action in April 2019.[3] Plaintiff averred that Christy filed the above-mentioned second circuit court action because leave to amend the complaint in the first action had been denied. The two circuit court actions were consolidated, and 1300 Lafayette filed counterclaims in the circuit court seeking plaintiff's

---

[1] At one point, Hall's firm was designated as Hall Makled. Later, his firm was designated as the Law Offices of Cyril C. Hall.

[2] It appears that Hall also represented Hoagland, but Hoagland is not a party to the instant malpractice action. Thus, we will only discuss Hoagland's involvement as necessary for factual context.

[3] The register of actions for that circuit court action was submitted into the record in this case, and it indicates that an order for substitution of attorney was entered on April 23, 2019, although it does not include any details regarding the substance of that order or the names of the attorneys involved.

unpaid carrying charges and to eject plaintiff from the unit, which was essentially the relief 1300 Lafayette had sought against plaintiff in the district court proceedings that remained stayed.

In a separate affidavit completed and submitted by plaintiff in the present malpractice action, plaintiff averred that "On November 19, 2020, Plaintiff retained attorney Ryan E. Hill . . . to substitute as counsel of record for attorney Hall in the 36th District Court case following detailed discussions and a voluminous exchange of documents related to the dispute with 1300 LEC, filed in both the 36th District Court and 3rd Circuit Court." Plaintiff also submitted a November 19, 2020 invoice for Hill's retainer. Hill filed an appearance in the district court on November 23, 2020, moved to lift the stay, moved to compel 1300 Lafayette to make repairs, and moved to release funds that plaintiff had put into escrow. The affidavit submitted by plaintiff also stated in relevant part as follows:

> 19. Upon discovering via email forwarded from attorney Hall to attorney Thomas P. Christy . . . regarding a hearing scheduled in 36th District Court that attorney Hall was still counsel of record for Plaintiff's spouse, Cecily Hoagland . . . she filed an appearance in the 36th District Court case, propria persona, on September 22, 2021. . . .[4]

> 20. Plaintiff avers that attorney Christy has never represented him or his spouse in the 36th District Court and further avers that since attorney Hall was substituted as counsel of record for attorney Tompkins, he remained counsel of record for Case No. 17-330548-LT, filed in the 36th District Court, until replaced by attorney Hill on Plaintiff's behalf and his spouse, pro se, on her own behalf.

> 21. Plaintiff further states he now knows that attorney Hall could have, and should have, moved the 36th District Court to compel 1300 LEC to comply with [the court's] order for repairs entered January 10, 2018. Further, Plaintiff now knows that attorney Hall severely compromised his rights by neglecting to seek injunctive relief to prevent 1300 LEC from suffering the dwelling unit to remain untenantable, even after entry of an order by [the court] for repairs, and failing to move for an order to release escrowed funds and either appoint a receiver to make repairs or grant Plaintiff consent, as required by Article 12 of their Occupancy Agreement, to make repairs and deduct the costs from any amounts found due and owing 1300 LEC, yet he neglected to do so.

> 22. Plaintiffs' right to secure the just, speedy and economical determination of its cause of action has been compromised by Defendants [sic] handling of this case first neglecting to enforce the court's order for repairs, then neglecting to compel responses to Plaintiffs' discovery requests served on 1300 LEC, then neglecting to prepare for final pretrial conference scheduled May 4, 2018 just sixty days from Defendants filing separate suit in the 3rd Circuit Court, then stipulating

---

[4] It appears that Hoagland is an attorney.

-3-

to stay summary proceedings filed by 1300 LEC instead of proceeding to trial on the merits of their claims.

23. In the instant case Plaintiffs have been prejudiced by needless delay resulting in the attrition of key witnesses during the past five years due to death or declining health, making them unavailable and/or unreliable as witnesses; senseless increases in the cost of litigation resulting from circuitous civil procedure, a perverse escalation of damages in dispute which at the time summary proceedings were initiated totaled less than Twenty-five Thousand Dollars ($25,000.00); Eight Thousand Dollars ($8,089.00) in rent and Fifteen Thousand Dollars ($15,000.00) in personal property damage; now five years later the damages in dispute exceed well over One Million Dollars ($1,000,000.00) with a significant portion of the costs attributable to legal fees and litigation expenses; as well as the preventable loss of plaintiffs' beneficial use of their dwelling, mental anguish and emotional distress caused by the management of this dispute.

24. Plaintiff continues to suffer untenantable conditions inside his dwelling unit as a result of negligent management practices of 1300 LEC and Defendants [sic] failure to pursue timely trial on the merits of Plaintiffs' defenses to summary proceeding filed by 1300 LEC . . . .

On November 16, 2022, plaintiff initiated the present malpractice action against Hall and the two law firms with which he had been associated at times during the underlying actions. Plaintiff amended his complaint two days later. In his amended complaint, plaintiff asserted two counts of legal malpractice against defendants. Plaintiff alleged that defendants failed to pursue timely adjudication by jury trial of the district court matter against 1300 Lafayette, which still had not been resolved. Plaintiff further alleged that defendants were professionally negligent in handling the district court matter for a variety of reasons. According to plaintiff, an "attorney representative of Defendants provided incorrect information and improperly advised Plaintiff to consent to stay proceedings in the 36th District Court, Landlord-Tenant Division, because claims they were alleging against 1300 LEC were beyond the subject matter jurisdiction of 36th District Court, must be filed in the 3rd Circuit Court, and both cases could not be maintained at the same time because they involved common questions of fact and issues of law arising from the same transaction or occurrence between the same parties." Plaintiff alleged that he

relied on Defendants' incorrect information and advice to his detriment by agreeing to stay proceedings. As a direct and proximate cause of relying on Defendants' information and advice trial on the merits of issues regarding possession, habitability, rights to release of escrow, and enforcement of the Court's Order for repairs were needlessly delayed and, as of the date of this complaint, remains unresolved after more than fifty-five months. Further, Plaintiff continues to be deprived of the beneficial use of his dwelling and has been compelled to spend in excess of Two Hundred Seventy-five Thousand Dollars $275,000.00 in legal fees, costs, and expenses for repair/storage of personal property as well as alternative living expenses while awaiting trial in the 3rd Circuit Court.

In lieu of filing an answer to the complaint, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and (10). Defendants argued that although they continued to represent other plaintiffs in the underlying circuit court litigation, plaintiff had terminated his attorney-client relationship with defendants no later than September 2020 when Christy appeared as plaintiff's counsel of record on filings in the underlying circuit court litigation. Defendants further noted that Christy had filed another related action on plaintiff's behalf on June 11, 2019. Thus, defendants contended that plaintiff's malpractice claims were barred by the two-year statute of limitations, MCL 600.5805(4).

In his response, plaintiff contended that defendants continued to represent him in the 36th District Court case until November 19, 2020, when he retained attorney Ryan Hill, of the Detroit Legal Group, PLLC, to substitute for Hall after plaintiff learned that a stay of the district court case was unnecessary because the claims and defenses asserted in that case were distinct from those asserted in the circuit court. That case apparently had remained stayed and had not been concluded. Plaintiff explained that he had proceeded *in propria persona* in the circuit court action against 1300 Lafayette since May 16, 2022, when Christy's motion to withdraw was granted. Plaintiff further argued that he had never been represented in the district court action by Christy, Brutman, or any attorney from Dean & Fulkerson. Accordingly, plaintiff maintained that his malpractice action was timely filed within the two-year statute of limitations.

In their reply brief, defendants asserted that their attorney-client relationship with plaintiff ended when plaintiff terminated their service in the Wayne Circuit Court case that was "intrinsically connected" to the district court case. They maintained that the termination of the relationship may be implied by the action or inaction of the client, including the hiring of a new attorney or revoking the attorney's authority to act, and explained that a legal malpractice action accrues on the last day that an attorney renders professional services to the client. Quoting from the affidavit made by plaintiff, which had been filed in the Wayne Circuit Court case and was attached as Exhibit A to the reply brief in the present case, defendants asserted that plaintiff had not sought any legal advice from Hall in the district court case since entry of the stay or since replacing Hall in the Wayne Circuit Court case. Defendants stated that the last service performed by Hall in the district court was the procurement of the stay in the district court. Defendants argued that plaintiff terminated defendants' representation regarding all matters involving the 1300 Lafayette litigation, including the district court proceedings, when plaintiff retained Christy as counsel in April 2019. Finally, defendants contended that the subsequent withdrawal by defendants in the district court after their representation was terminated by plaintiff was merely "a ministerial act to formalize the end of the relationship" and " '[m]inisterial' acts performed in furtherance of ethical obligations to former clients cannot be used to revive or maintain the lawyer-client relationship."

Following a hearing on the motion, the trial court granted summary disposition in favor of defendants under MCR 2.116(C)(7), concluding that the action was barred by the statute of limitations. The court ruled that plaintiff had replaced defendants with new counsel in April 2019 and that there was no evidence that defendants provided any legal services after that time. This appeal followed.

## II. STANDARD OF REVIEW

This Court "review[s] de novo the question whether a claim is barred by the statute of limitations and the issue of the proper interpretation and applicability of the limitations periods." *City of Fraser v Almeda Univ*, 314 Mich App 79, 100; 886 NW2d 730 (2016) (quotation marks and citation omitted). A trial court's decision on a motion for summary disposition is also reviewed de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). Under de novo review, the legal issues are reviewed independently, with no deference required to the courts below. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

Here, the trial court ruled that defendant was entitled to summary disposition under MCR 2.116(C)(7) because plaintiff's claim was barred by the statute of limitations. MCR 2.116(C)(7) authorizes summary disposition on the ground that "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . statute of limitations . . . ." When a motion for summary disposition is filed under MCR 2.116(C)(7), neither party is required to file supportive material and "the contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *The Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, 305 Mich App 92, 111; 850 NW2d 649 (2014) (quotation marks and citation omitted).

However, "a party moving for summary disposition under MCR 2.116(C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider." *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). "The reviewing court must view the pleadings and supporting evidence in the light most favorable to the nonmoving party to determine whether the undisputed facts show that the moving party has immunity." *Id*. "[T]he burden is on the defendant who relies on a statute of limitations defense to prove facts that bring the case within the statute," and "[s]ummary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations." *Id*.

## III. ANALYSIS

Plaintiff argues that the trial court erred by finding that defendants' representation of plaintiff ended in April 2019 with respect to the district court action and that plaintiff's legal malpractice claim filed on November 16, 2022, which was based on defendants' handling of the district court matter, was therefore barred by the two-year statute of limitations.

A legal malpractice claim accrues at the time that the attorney "discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838(1). A claim of legal malpractice must be brought within two years from the time the claim first accrued or "within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." MCL 600.5805(1) and (8); MCL 600.5838(2). Furthermore, pursuant to MCL 600.5838b(1), a legal malpractice action "shall not be commenced" after the expiration of the applicable limitations period or "[s]ix years after the date of the act or omission that is the basis for the claim," whichever is earlier. See generally *Nortley v Hurst*, 321 Mich App 566, 571; 908 NW2d 919 (2017).

Here, plaintiff argues that the trial court erred by determining that defendants' representation of plaintiff in the district court action also ended in April 2019 when defendants were replaced by attorney Christy and his firm through a substitution of counsel entered in the circuit court action and therefore concluding that plaintiff's malpractice claim against defendants was barred because it had accrued more than two years before plaintiff filed this action on November 16, 2022. Plaintiff maintains that defendants remained as counsel of record relative to the district court proceedings until attorney Hill was substituted in that action on November 19, 2020, thus rendering the present malpractice action timely filed within the limitations period.

Hence, the issue we must resolve in this case concerns the proper determination of when plaintiff's legal malpractice claims accrued, which requires a determination of when defendants "discontinue[d] serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose" for purposes of MCL 600.5838(1). As this Court has explained:

> Special rules have been developed in an effort to determine exactly when an attorney "discontinues serving the plaintiff in a professional . . . capacity" for purposes of the accrual statute. For example, this Court has stated that an attorney's representation of a client generally continues until the attorney is relieved of that obligation by the client or the court. *Mitchell v Dougherty*, 249 Mich App 668, 683; 644 NW2d 391 (2002). This Court has also ruled that "[r]etention of an alternate attorney effectively terminates the attorney-client relationship." *Id.*, citing *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994).
>
> These rules, however, are useful only to the extent that they actually serve to measure the accrual of a claim within the meaning of MCL 600.5838(1). Certain factual situations do not permit application of these rules. Instead, certain situations require application of the more general rule, defined in *Gebhardt v O'Rourke*, 444 Mich 535, 543; 510 NW2d 900 (1994). There, our Supreme Court held simply that a legal malpractice claim accrues on the attorney's "last day of professional service" in the matter out of which the claim for malpractice arose. *Id.* Similarly, this Court has held that when an attorney is not dismissed by the court or the client, and substitute counsel is not retained, the attorney's service discontinues "upon completion of a specific legal service that the lawyer was retained to perform." *Maddox*, *supra* at 450, citing *Chapman v Sullivan*, 161 Mich App 558, 561-562; 411 NW2d 754 (1987).
>
> We once again recognize that a plaintiff's legal malpractice claim accrues on the day that the attorney last provides professional service in the specific matter out of which the malpractice claim arose. We now hold that in the absence of an attorney's dismissal by the court or the client, and in the event that an attorney sends notice of withdrawal as his or her final act of professional service, a legal malpractice claim with respect to a particular matter that has been finally dismissed by order of the trial court accrues at the time affirmative notification of withdrawal is sent. [*Kloian v Schwartz*, 272 Mich App 232, 237-238; 725 NW2d 671 (2006) (ellipsis and alteration in original, some citations omitted).]

In early 2018, plaintiff hired Hall to represent him in the district court eviction proceedings initiated by 1300 Lafayette. The issue at hand was 1300 Lafayette's claim to possess the leased unit due to plaintiff's failure to pay rent. Plaintiff objected to the claim and stated that 1300 Lafayette did not adequately address water leaks on the property, rendering it unfit for its intended use and needing repair. As a result, plaintiff withheld rent and placed it in escrow.

In March 2018, Hall filed a lawsuit in the circuit court on behalf of plaintiff against 1300 Lafayette, citing the same factual circumstances regarding the water leaks. Additionally, substantial monetary damages were sought in the circuit court. The district court action was halted in April 2018 as the district court judge stated that the circuit court action might resolve the issues.

According to plaintiff's affidavit, Christy and Brutman replaced Hall as counsel in April 2019, and an order was entered to that effect in the pending circuit court action. In June 2019, Christy filed another circuit court action on behalf of plaintiff to address water leaks on the property. Contending that the continued water leaks meant that 1300 Layfayette had not kept the property fit for its intended use or in reasonable repair, plaintiff asserted he was justified in withholding rent.

It was noted that in the specific circumstances of this case, plaintiff actually paid "carrying charges," which seem to be the functional equivalent of "rent." The question then, is whether the trial court made a mistake in concluding that, based on the evidence in favor of plaintiff, Hall's representation of the plaintiff was legally terminated when plaintiff hired new legal counsel in April 2019 for circuit court case.

Here, none of the circumstances described in *Kloian* exist that would show an obvious termination of defendants' services relative to the district court action specifically: there is no evidence of a formal memorialization that defendants' services in the district court had been terminated, there is no evidence that defendants withdrew in the district court until Hill's substitution in November 2020, and the district court matter had not been concluded. See *Kloian*, 272 Mich App at 237-238. Plaintiff argues that Hall was still the attorney of record for the district court case until Hill took over. This means that Hall was still responsible for plaintiff's legal matters while the district court case was on hold and the circuit court case continued. Therefore, plaintiff maintains that defendants did not discontinue their professional services to plaintiff as to the district court matter for statute-of-limitation purposes until November 19, 2020, rendering the current malpractice action timely filed within the two-year limitations period.

Nonetheless, plaintiff also acknowledges that defendants did not provide any further legal advice or services to plaintiff after Christy and his firm took over as counsel for plaintiff in the circuit court in April 2019. Although an attorney's representation of a client generally "continues until the attorney is relieved of the obligation by the client or the court," *Mitchell*, 249 Mich App at 683, "no formal discharge by the client is required, and the termination of an attorney-client relationship can be implied by the actions or inactions of the client," *id*. at 684. "[T]he retention of alternate counsel is sufficient proof of the client's intent to terminate the attorney's representation." *Id*. "Further, where a client obtained legal advice from an attorney, then had no further contact with that attorney until filing a complaint for legal malpractice, . . . the client relieved the attorney of his obligations on the date the attorney last advised the client." *Id*. at 684-685.

In *Mitchell*, *id*. at 670-671, the plaintiffs retained two attorneys from the same firm to pursue a medical malpractice action. The two attorneys subsequently left the law firm but

continued to represent the plaintiffs. *Id*. at 671. The original law firm did not perform any professional services for the plaintiffs following the departure of the two attorneys who continued to represent plaintiffs. *Id*. at 671-672. Eventually, the plaintiffs filed a legal malpractice action against the two attorneys and their former law firm based on alleged negligence committed by the two attorneys during the medical malpractice action and after the attorneys had left their former law firm. *Id*. at 672. Relevant to the issue in the present appeal, the defendant law firm moved for summary disposition on the ground that "it no longer represented plaintiffs after defendant attorneys left the firm, and the malpractice alleged in this case occurred after their representation ceased." *Id*. The trial court granted the motion. *Id*. at 672-673.

On appeal, this Court recognized:

Retention of an alternate attorney effectively terminates the attorney-client relationship. However, in this case, plaintiffs did not retain alternate counsel. Rather, they maintained their relationship with defendant attorneys after the attorneys' separation from defendant law firm. At no time did plaintiffs formally terminate their representation by defendant law firm. Therefore, the question we must address here is whether the attorney-client relationship between plaintiffs and defendant law firm was terminated and, if it was, when that termination occurred. [*Id*. at 683 (citation omitted).]

This Court affirmed the trial court and held that "[i]n view of the precedent establishing that an attorney-client relationship can be terminated by implication, we conclude that the facts of this case show the intent of plaintiffs to terminate their relationship with defendant law firm." *Id*. at 685, 686. The Court rejected the plaintiffs' argument that "they did not terminate their attorney-client relationship with defendant law firm because they did not clearly indicate that they were releasing defendant law firm from its obligation to represent them." *Id*. at 683-684. The Court reasoned:

Defendant attorneys ceased their association with defendant law firm in January 1996, and plaintiffs were aware that defendant attorneys would be partners in a new law firm. After defendant attorneys left defendant law firm, the firm did not provide any further professional services for plaintiffs. There is no evidence that plaintiffs either objected to representation by defendant attorneys through their new law firm or sought to continue representation by defendant law firm. Although plaintiffs did not retain "new" counsel, plaintiffs' decision to continue their representation with defendant attorneys at a new firm rather than remain with defendant law firm was the functional equivalent of retaining a new attorney. On these facts, we find that plaintiffs relieved defendant law firm of its obligation to represent them when defendant attorneys ended their association with the law firm in January 1996. [*Id*. at 685-686.]

Here, plaintiff terminated defendants' representation in the circuit court action and retained new counsel in that action in April 2019. Notably, the circuit court action essentially subsumed the original district court action by including the issues to be litigated in that action and expanding the litigation to include additional parties and issues. There is no evidence that plaintiff *actually* sought legal advice or services from defendants at any point—for any purpose, including the

district court matter—after replacing defendants in the circuit court. Under these undisputed facts, it was plaintiff's demonstrated intent through his actions and inactions to relieve defendants of their obligation to represent him in all matters related to his dispute revolving around the persistent water leaks and other maintenance issues with his residence, including the matter that had been stayed in the district court while intricately entwined circuit court litigation progressed. *Id*. at 684-686. The mere fact that Hall remained listed as counsel of record in the district court action, where those proceedings remained stayed and Hall did not perform any services for plaintiff or provide any legal advice on any matters, does not change the outcome on this record; for purposes of the statute of limitations, an attorney is discharged when the client ends the attorney's authority, and no additional court action is necessary to effectuate that discharge. *Hooper v Lewis*, 191 Mich App 312, 315-316; 477 NW2d 114 (1991).

The trial court did not err by concluding as a matter of law that defendants discontinued providing professional services to plaintiff in April 2019, well more than two years before plaintiff filed this legal malpractice action, and determining that summary disposition was warranted under MCR 2.116(C)(7).[5]

Affirmed. Defendants, having prevailed, are entitled to costs. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani

---

[5] In light of this conclusion, we need not address defendants' alternative arguments for affirmance.