*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH CARLIN,

Plaintiff-Appellant,

v

MARC N. DRASNIN, JOELSON, ROSENBERG, MOSS, COHEN, WARREN & DRASNIN, PLC, DEBRA N. RIBITWER, and DEBRA N. RIBITWER & ASSOCIATES, PC,

Defendants-Appellees.

UNPUBLISHED
December 12, 2025
1:31 PM

No. 373103
Oakland Circuit Court
LC No. 2024-206295-NM

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

In this legal-malpractice action, plaintiff, Sarah Carlin, appeals as of right the trial court order granting summary disposition to defendants, Marc N. Drasnin; Joelson, Rosenberg, Moss Cohen, Warren & Drasnin, PLC (the Drasnin defendants); Debra N. Ribitwer; and Debra N. Ribitwer & Associates, PC (the Ribitwer defendants). We affirm.

## I. BACKGROUND

Sarah married Stuart Carlin in 2011. Before their marriage, the couple signed a prenuptial agreement that reserved premarital property, including any increase in value of that property, to themselves if they divorced. Relevantly, the parties agreed that Stuart's interest in his company, MachineWeb, Inc., would remain separate property if they divorced. In 2019, Stuart commenced divorce proceedings in Oakland Circuit Court. Sarah hired the Drasnin defendants to represent her. The parties reconciled in 2020, and the divorce matter was dismissed. But Stuart filed for divorce again in 2021. Sarah retained the Ribitwer defendants to represent her in the 2021 divorce action. She later retained the Drasnin defendants as Ribitwer's co-counsel.

Despite the prenuptial agreement, Sarah sought to invade Stuart's separate property on three grounds: (1) the marital property was insufficient for the suitable maintenance of her and the children, (2) Sarah contributed to the improvement of Stuart's separate property, and (3) Stuart's separate property was comingled with the marital property. From August 2, 2021 through March

-1-

9, 2022, defendants conducted discovery to obtain information regarding Stuart's business records and assets, and took steps to maintain the parties' financial status quo:

• Retained Cendrowski Corporate Advisors to provide business valuation and forensic accounting services;

• Moved for a temporary restraining order to prevent the destruction of evidence related to Stuart's finances;

• Obtained a mutual restraining order regarding financial matters and to preserve evidence;

• Obtained an order maintaining the status quo of the marital monthly budget;

• Sent interrogatories and requests to produce documentation regarding Stuart's business interests and employment;

• Sent a supplemental request to produce documentation on Stuart's businesses;

• Sent a second supplemental request to produce business records;

• Moved to compel Stuart to provide discovery responses and more specific answers;

• Obtained an order compelling Stuart to give more specific answers to discovery requests;

• Moved to sanction Stuart for failing to provide discovery on business records; and

• Moved to enforce status-quo order and appoint receiver to manage marital finances.

In April 2022, Sarah's relationship with defendants broke down, and she retained attorney Keela Johnson as successor counsel.[1] Defendants continued to work on discovery issues and ensure that the parties' financial status quo was maintained during the transition period. For example, before Johnson filed her appearance, defendants stipulated to an order appointing a discovery master to decide all "open discovery disputes and any future discovery disputes . . . ."[2] Defendants also stipulated to an order appointing a receiver to collect income, pay the bills, make

---

[1] Sarah maintains that she hired Johnson on April 22, 2022. Johnson filed her appearance on May 5, 2022. On May 27, 2022, the trial court entered stipulated orders allowing Drasnin and Ribitwer to withdraw.

[2] The trial court had set a discovery deadline of 60 days before trial. At the time that the scheduling order was issued, trial was scheduled for June 14, 2022.

recommendations on selling the family home, and conduct other investigations to maintain the marital estate.[3]

After defendants withdrew, Sarah and Stuart agreed to binding arbitration in lieu of a trial. The parties agreed that the arbitrator would decide "all contested issues" in the divorce, including determining "the separate and marital property of the parties and equitabl[e] distribution of the estate based upon the facts and circumstances provided in accordance with Michigan law, valuation of businesses, spousal support, custody, parenting time, child support and attorney fees, any other matters determined to be necessary to resolve this case, and other disputed issues brought by either party . . . ." The arbitrator held evidentiary hearings on August 17 and November 17, 2022. Both parties testified and presented expert testimony regarding the value of Stuart's interest in MachineWeb. Sarah claimed that the business had increased in value during the marriage and that she was partially responsible for the increase.

On January 31, 2023, the arbitrator issued his award. Notwithstanding the terms of the prenuptial agreement, the arbitrator concluded that some invasion of Stuart's premarital assets was necessary to achieve an equitable distribution. But he found that Sarah did not "contribute[] to the value of the business, as she maintains." The arbitrator noted that the parties devoted "a great deal of time eliciting testimony from their respective experts on the value of Stuart's interest in Machineweb [sic], Inc." However, the arbitrator concluded that any increase in the value of the business was "mostly irrelevant" in light of the prenuptial agreement. The arbitrator valued the marital estate at $1,077,163 and awarded each party 50%. Because Stuart's assets held more value, the arbitrator stated that, to comply with his property division, Stuart had to pay Sarah "$361,072 to equalize the value of the property awarded." The arbitrator also ordered Stuart to pay child support and 42 months' spousal support. Each party was determined to be responsible to pay their own attorney and professional fees.[4]

After issuing his arbitration award, the arbitrator made some modifications and corrections as requested by the parties. The final arbitration award was issued on April 7, 2023. Stuart moved the trial court to confirm the award, but Sarah challenged the award on various grounds including the amount of child support and her obligation to pay her own legal fees and expenses. The trial court confirmed the majority of the arbitration award, but agreed that Stuart should pay supplemental child support. The divorce judgment was entered on June 7, 2023. Sarah appealed, and this Court affirmed the judgment of divorce. *Carlin v Carlin*, unpublished per curiam opinion of the Court of Appeals, issued September 19, 2024 (Docket No. 366649).

---

[3] Sarah signed both orders.

[4] At the time of arbitration, Sarah's attorney and professional fees totaled $338,413 (Ribitwer and Drasnin=$174,439, Johnson=$132,918, and John Alfonsi (financial expert)=$31,056). Assuming Stuart removed Sarah's name from the home and refinanced the mortgage by the deadline set by the arbitrator, Stuart was ordered to pay Sarah's outstanding attorney and professional fees from the refinance proceeds and to deduct those fees from the equalizer payment to Sarah. If Stuart was unable to borrow sufficient funds to pay his obligations, the arbitrator ordered that the home would be sold and the arbitrator would determine how to allocate the proceeds.

While her appeal was pending, Sarah commenced this legal-malpractice action alleging that defendants failed to conduct any meaningful discovery, failed to take steps to enforce the parties' status quo in the divorce, and charged excessive legal fees. Sarah alleged that as a result of defendants' malpractice, she received a smaller property distribution and she had to expend over $50,000. She also claimed that she sustained noneconomic damages, including frustration and anger. Sarah further asserted that defendants' legal fees were excessive.

In lieu of an answer, the Drasnin defendants moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that Sarah could not establish that the Drasnin defendants' actions caused her to receive less in settlement proceeds. The Ribitwer defendants joined the Drasnin defendants' motion, adopting the factual and legal conclusions, and argued that Sarah also could not establish that the Ribitwer defendants' actions caused her to receive less in settlement proceeds.

Sarah argued the motion was premature because no discovery had been conducted. She further asserted that defendants failed to conduct any meaningful discovery in the divorce action despite evidence that Stuart was concealing assets and otherwise committing fraud to reduce the amount Sarah would receive from the marital estate. Sarah contended that proximate cause was a question of fact for the jury to determine. Sarah supported her response with her own affidavit regarding the alleged financial concealments and an affidavit from her counsel outlining the discovery needed.

The trial court granted summary disposition to defendants. The trial court found that Johnson "had plenty of time to proceed with additional discovery prior to the arbitration hearings." The trial court further found that Johnson had an opportunity to correct any alleged discovery deficiencies that defendants allegedly caused. The trial court also rejected Sarah's allegations that Stuart was hiding money, stating they were purely speculative. Citing *Boyle v Odette*, 168 Mich App 737, 745; 425 NW2d 472 (1988), the trial court concluded that Sarah failed to establish causation because defendants were replaced by competent counsel who had time to take action. The trial court also held that Sarah could not maintain a civil cause of action for allegedly excessive legal fees. The trial court additionally rejected Sarah's claim that defendants failed to enforce the status quo, stating: "The Court fails to see how Plaintiff can establish causation for a legal malpractice claim based upon Defendants' alleged failure to enforce the status quo given the entry of the order appointing a receiver." The trial court acknowledged that summary disposition is generally premature before discovery is complete, but stated that the record of the alleged malpractice is settled and the dispositive facts were not in dispute. Accordingly, the trial court concluded that summary disposition was appropriate.

Sarah moved for reconsideration, which the trial court denied. Sarah now appeals.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Where a motion for summary disposition is brought under both MCR 2.116(C)(8) and (C)(10), but the parties and the trial court relied on matters outside the pleadings, as is the case here, MCR 2.116(C)(10) is the appropriate basis for review." *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008). Summary disposition under MCR 2.116(C)(10) is warranted when

"[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (cleaned up). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A court "is not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "Instead, the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Id*.

We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Sanders v Perfecting Church*, 303 Mich App 1, 8; 840 NW2d 401 (2013). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Colen v Colen*, 331 Mich App 295, 300; 952 NW2d 558 (2020) (cleaned up).

III. ANALYSIS

A. CAUSATION

To establish a legal-malpractice claim, a plaintiff must prove:

(1) the existence of an attorney-client relationship;

(2) negligence in the legal representation of the plaintiff;

(3) that the negligence was a proximate cause of an injury; and

(4) the fact and extent of the injury alleged. [*Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995).]

"In legal malpractice actions, a duty exists, as a matter of law, if there is an attorney-client relationship." *Id*. An attorney has a duty "to use reasonable skill, care, discretion and judgment in representing a client." *Id*. at 656. An attorney has the duty to devise a strategy that is consistent with prevailing Michigan law, but does not have a duty to guarantee the most favorable possible outcome. *Id*. An unfavorable result alone is not evidence of negligent representation, so long as "an attorney acts in good faith and in honest belief" that his actions are based in law and in the interest of the client. *Id*. at 657-658. Further, retention of an alternate attorney effectively terminates the attorney-client relationship. *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994).

In this case, Sarah alleged defendants breached their duty owed to her by failing to: (1) "conduct discovery in the underlying case, including but limited to [sic] issuing written discovery and/or subpoenas;" (2) "take depositions of critical parties, including Stuart Carlin;" (3) "obtain relevant records pertaining to Mr. Carlin's business entities;" (4) "seek an extension of the discovery deadline after indicating [they were] withdrawing as counsel from the case;" and (5) "ensure the Order for Maintenance of Status Quo was enforced[.]" The attorney-judgment rule

applies to an attorney's good-faith, strategic decisions during discovery. See *Simko*, 448 Mich at 660-661. Before the trial court, defendants presented evidence of the extensive discovery requests that they sent out and their efforts to compel Stuart to produce discovery. Before they withdrew from the case, defendants secured the appointment of a discovery master who had the power to resolve all "open and future discovery disputes." Defendants also presented evidence of the measures that they took to preserve the status quo, including the appointment of a receiver.

Sarah's allegations that defendants should have deposed Stuart and subpoenaed "financial and other records from the various financial institutions, mortgage companies, lenders and other entities with whom the parties had transacted business over the last decade" cannot support a breach of duty because they are based on mere errors of professional judgment and not breaches of reasonable care. See *id*. at 659.

Notwithstanding the lack of evidentiary support that defendants were negligent, the trial court agreed with defendants' primary argument that Sarah could not establish the causation element of her malpractice claim. "As in any tort action, to prove proximate cause a plaintiff in a legal malpractice action must establish that the defendant's action was a cause in fact of the claimed injury." *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586; 513 NW2d 773 (1994). A plaintiff must show that but for the attorney's alleged malpractice, the plaintiff would have been successful in the underlying lawsuit. *Id*. A plaintiff must prove cause in fact by reasonable inference and not just by mere speculation and impermissible conjecture. *Pontiac School Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 615; 563 NW2d 693 (1997). "[W]hile causation is generally a matter for the trier of fact, if there is no issue of material fact, then the issue is one of law for the court." *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003).

Citing *Boyle*, 168 Mich App at 745, the trial court concluded that Sarah failed to establish causation because defendants were replaced by competent counsel who had time to take action. In *Boyle*, an attorney represented the plaintiff in a negligence action arising out of an automobile accident where the other driver, a minor, was under the influence of alcohol. *Id*. at 739-741. That case settled. *Id*. at 740. The plaintiff subsequently retained a new attorney to pursue additional claims arising out of the accident. *Id*. at 741. The subsequent attorney filed a dramshop action, which was dismissed by the trial court. *Id*.[5] The plaintiff then brought a legal-malpractice claim against her former attorney asserting that he failed to investigate and timely pursue a dramshop claim. *Id*. The trial court granted summary disposition in favor of the former attorney, concluding that any damages the plaintiff suffered were attributable to the subsequent attorney's failure to file suit before the period of limitation had expired. *Id*. at 742. The plaintiff appealed to this Court. This Court affirmed, concluding that the defendant could not be held liable for failing to file a social-host action because "he ceased to represent plaintiff and was replaced by other counsel before the statutory period ran on her underlying action." *Id*. at 745.

---

[5] The *Boyle* plaintiff claimed that the dramshop action was dismissed because the statute of limitations expired. However, this Court noted that the trial court's order stated that it was dismissed for failure to state a claim upon which relief could be granted. *Boyle*, 168 Mich App at 741.

On the basis of this Court's holding in *Boyle*, this Court reached a similar conclusion in *Mitchell v Dougherty*, 249 Mich App 668, 682-683; 644 NW2d 391 (2002). In *Mitchell*, the plaintiffs argued that their lawyer and the lawyer's former law firm were liable for the lawyer's failure to timely pursue a medical-malpractice lawsuit. The defendant law firm relied on *Boyle* to argue "where a firm ceases to represent a client and the client acquires new counsel before the applicable limitation period expires, the firm is not liable for the failure to file an action prior to the expiration of the limitation period." *Id.* at 681. This Court agreed and affirmed summary disposition in the law firm's favor. *Id.* at 682, 686.

In this case, Sarah retained Johnson as her successor counsel on April 22, 2022. Johnson filed her appearance on May 5, 2022. Defendants remained involved in the matter until the stipulated orders allowing them to withdraw were entered on May 27, 2022. Until those orders were entered, defendants continued to owe Sarah a duty "to act as an attorney of ordinary learning, judgment, or skill would under the same or similar circumstances." *Id.* at 677, 683. The record reflects that defendants continued to work on discovery issues and ensure that the parties' financial status quo was maintained during the transition period. After defendants withdrew, Sarah and Stuart agreed to binding arbitration in lieu of a trial. The arbitrator held hearings on August 17, 2022 and November 17, 2022. Under MCL 600.5074(2) and (3), the arbitrator had the power to issue subpoenas and order discovery, including sworn statements, on contested issues. Johnson had at least four months to identify and remedy any perceived discovery deficiencies and pursue any necessary action to enforce the financial status quo.[6] There is also no evidence that Johnson was hindered during the arbitration proceedings by any alleged misconduct of defendants. Sarah and Stuart both testified at the hearing and presented expert testimony. Johnson had an opportunity to cross-examine Stuart and his expert, and to present any other witnesses that may have been necessary. Viewing the facts in the light most favorable to Sarah, the trial court correctly concluded that Sarah failed to establish defendants' alleged malpractice caused her alleged injuries.[7]

---

[6] Sarah argues that the receivership order limited discovery to dates after 2015, which "severely limited" the discovery Johnson could conduct. Because Sarah raised this factual argument for the first time in her motion for reconsideration, it is not preserved and we decline to consider it in reviewing the trial court's summary-disposition order. See *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 316; 885 NW2d 892 (2015).

[7] On appeal, Sarah references and attaches several items that were not included in her response to defendants' motions for summary disposition: e-mails between her and Johnson, an excerpt from the Stuart B. Carlin Living Trust's declaration of trust, an e-mail from the attorney who set up Stuart's trust, defendants' billing statements, e-mails from Sarah to Drasnin, and a letter from another attorney to the Drasnin defendants regarding the fee dispute. "[W]e only consider what was properly presented to the trial court before its decision on the motion." *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003). Because these documents were not presented to the trial court before it granted defendants' motions for summary disposition, we will not consider them in reviewing the trial court's summary-disposition order. See *Karaus v Bank of New York Mellon*, 300 Mich App 9, 15 n 2; 831 NW2d 897 (2012); *Innovative Adult Foster Care, Inc v Ragin,* 285 Mich App 466, 474 n 6; 776 NW2d 398 (2009).

The trial court also did not err by determining that defendants were entitled to summary disposition on Sarah's claims for excessive fees because Sarah failed to address any of defendants' arguments on these claims in her response to their motions for summary disposition. "[T]he nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (citations omitted), quoting *Quinto v Cross and Peters Co*, 451 Mich 359, 362-363; 547 NW2d 314 (1996). And because Sarah failed to raise any arguments on this issue in response to defendants' motion for summary disposition, she has waived the issue on appeal. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472 (2023) (noting that under Michigan's "raise or waive" rule, failure to raise an issue in the trial court renders the issue waived on appeal).

## B. SUMMARY DISPOSITION BEFORE DISCOVERY

Sarah further contends that the trial court erred by granting summary disposition before discovery had even commenced. The trial court concluded that no amount of discovery would establish a causal connection between defendants' conduct and Sarah's alleged injuries. Summary disposition is generally premature if granted before the completion of discovery on a disputed issue, but may be appropriate "if there is no fair chance that further discovery will result in factual support for the party opposing the motion." *Mackey v Dep't of Corrections*, 205 Mich App 330, 333; 517 NW2d 303 (1994). A party opposing summary disposition may not simply allege that summary disposition is premature, but must clearly identify a disputed issue for which they assert discovery must be conducted, support the issue with independent evidence, and show that further discovery presents a fair likelihood of providing factual support for the opposing party's position. *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 253; 964 NW2d 50 (2020). Mere speculation that additional discovery may uncover supporting evidence is not enough. *Caron v Cranbrook Ed Community*, 298 Mich App 629, 646; 828 NW2d 99 (2012). Because Sarah failed to offer independent evidence in support of her opposition to the motion for summary disposition, we conclude that the trial court did not err by granting summary disposition in favor of defendants before the completion of discovery.

## C. MOTION FOR RECONSIDERATION

In moving for reconsideration, Sarah presented new evidence in an attempt to establish that the trial court palpably erred by granting summary disposition to defendants: e-mails between Sarah and Johnson, excerpts from the Stuart B. Carlin Living Trust's declaration of trust, an e-mail from Sarah to Drasnin, defendants' billing statements (with Sarah's additional comments), and a letter from another attorney to the Drasnin defendants regarding the fee dispute. None of this evidence was presented by Sarah in response to defendants' motions for summary disposition. Sarah also argued, for the first time, that her fee agreement with Drasnin allegedly violated MRPC 1.5. A trial court has discretion on a motion for reconsideration to decline to consider new legal theories or evidence that could have been presented when the motion was initially decided. MCR 2.119(F)(3); *Woods v SLB Property Mgt, LLC*, 277 Mich App 622, 629-630; 750 NW2d 228 (2008). Sarah could have presented this evidence and arguments when she responded to defendants' motions. "We find no abuse of discretion in denying a motion resting on a legal theory

and facts which could have been pled or argued prior to the trial court's original order." *Charbeneau v Wayne Co Gen Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987). Accordingly, we conclude that trial court's denial of Sarah's motion for reconsideration is within the range of the reasonable and principled outcomes.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace